IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 11, 2003

**EARL JUNIOR PIKE v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 97-A-369     Cheryl Blackburn, Judge**

_____

**No. M2002-01363-CCA-R3-PC - Filed June 27, 2003**

_____

The petitioner, Earl Junior Pike, appeals from the post-conviction court's denial of his petition for post-conviction relief, which alleged that his appointed trial counsel was ineffective for not allowing him to testify at trial. Following a hearing, the post-conviction court dismissed the petition, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

David M. Hopkins, Nashville, Tennessee, for the appellant, Earl Junior Pike.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner was convicted in March 1998 of aggravated sexual battery and rape of a child and sentenced to thirty-seven years imprisonment. His conviction was affirmed on direct appeal to this court, and our supreme court denied permission to appeal. See State v. Earl Junior Pike, No. 01C01-9804-CR-00168, 1999 WL 737876, at *1 (Tenn. Crim. App. Sept. 22, 1999), perm. to appeal denied (Tenn. Mar. 6, 2000). On March 14, 2001, he filed a *pro se* petition for post-conviction relief, which was subsequently amended by appointed counsel. The amended petition alleged that the petitioner was denied effective assistance of counsel at trial, in that the trial counsel failed (1) to move to suppress certain incriminating statements the petitioner made to police, (2) to allow the petitioner to testify at trial, and (3) to investigate and discover evidence that would have lessened the petitioner's sentence. Following an evidentiary hearing, the post-conviction court denied the petition as to all three claims, and the petitioner appealed, continuing only the claim that the court erred in finding that the trial counsel did not prevent the petitioner from testifying at his trial.

# ANALYSIS

## Standard of Review

A post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

## Ineffective Assistance of Counsel

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the

variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

By statute in Tennessee, the petitioner at a post-conviction relief hearing has the burden of proving the allegations of fact by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997). A petition based on ineffective assistance of counsel is a single ground for relief, therefore all factual allegations must be presented in one claim. See Tenn. Code Ann. § 40-30-206(d) (1997).

We note that when post-conviction proceedings have included a full evidentiary hearing, as was true in this case, the trial judge's findings of fact and conclusions of law are given the effect and weight of a jury verdict, and this court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in Burns, 6 S.W.3d at 462, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

At the hearing, the petitioner claimed that he had a third grade education, did not read or write, possessed the IQ of a kindergartner, and had brain damage from a series of strokes. In his testimony that he desired to testify at trial, he recounted telling a detective that he had committed the acts of which he was accused:

> Yes, I told [the detective] that but also whenever I told him what I told him in the car, sitting at my apartment, [the detective] told me and it wasn't on tape, wasn't nobody's voice on tape but mine, he turned the tape recorder off when he went to talking but when I was talking, he would turn the tape recorder on. He told me, he said if we can't get your statement, he said if you won't tell us what we want to know, I can see that your kids are taken away from you for life. He said and I will do that in order to see that you serve this time, what you are supposed to be doing. He said I can do that.[1]

The petitioner also said that trial counsel had told him it was not in his best interest to testify, and once said he would "not allow" the petitioner to testify:

Q. Did you ever ask [trial counsel] if you could testify?

A. Yes, I did.

Q. And what was his response to that?

A. It would be in your best of interest for you not to testify for you could hang yourself.

Q. Did he ever tell you that he would not allow you to testify?

A. One time, he did.

The petitioner later acknowledged on cross-examination that counsel had spoken to him about testifying, advising him that it would do more harm than good for him to take the stand, and that he had agreed to this advice.

The petitioner's trial counsel testified that he had practiced law for twenty-five years, mostly in criminal law. He said that he had several reasons for advising the petitioner not to take the stand, one of which was the petitioner's lack of intelligence. He did not want the petitioner, whom he knew had a limited education and mental capacity, to testify in a courtroom setting where "he becomes

---

[1]Trial counsel filed a motion to suppress the incriminating statements, claiming that the petitioner did not knowingly, intelligently, and voluntarily waive his right against self-incrimination. However, the motion was unsuccessful.

more difficult to understand and his comprehension decreases, so I guess I'm saying partially I thought that he was probably a fairly poor historian." Also, trial counsel did not want prior admissions the petitioner made to the police to be brought up again, nor did he want the jury to hear about the petitioner's previous conviction for a sexual offense or certain "bad acts" involving a relative. Trial counsel explained his reasons for concluding that the defense would not be benefitted by the petitioner's testimony:

> [H]e had made admissions to Detective Imhoff. It was going to be necessary for me to attack [the petitioner's] own admissions and I didn't care to bolster that by having him take the witness stand and be in a potential jeopardy of having to repeat them again. He did have the prior conviction. There was, as the transcript reflects and as I recall, some discussion of other prior bad acts involving a relative in Kentucky by the name of Annie, and there was some discussion during the course of the case about that.
>
> It would be my opinion that [the petitioner] would have had a difficult job in testifying, even surviving a warm and fuzzy direct examination much less a spirited cross-examination.

Trial counsel further testified that he recalled advising the petitioner not to take the stand and had no recollection of the petitioner's disagreeing with the recommendation:

> Q. Okay. I'm just saying, along that line, assuming for the sake of this question that you had had an opinion one way or the other about [the petitioner] testifying and his had been diametrically opposed, would that have been something that you would normally make note of and have some memory or notations of?
>
> A. Yes.
>
> Q. Okay. Do you recall that happening in this case?
>
> A. Not at all.

Finally, counsel testified as to how he explained the case to the petitioner and made sure that he understood what was happening:

> Q. Did you have trouble communicating with him?
>
> A. No, so long as I took additional time and checked with [the petitioner] to be sure that he was following what I was saying;

occasionally asking him to repeat to me or state it to me differently. If I proceeded as I normally would have, I think [the petitioner] would have understood only a small portion of what I said.

In its written findings of fact and conclusions of law, the post-conviction court found that the decision not to testify at trial was the petitioner's, and counsel had not prohibited him from testifying:

The Court is convinced based on the facts cited above that [trial counsel] advised the petitioner as to his right to testify at trial and after consultation, the petitioner took counsel's advice and decided not to testify. The Court finds that the petitioner has failed to carry his burden of proof with regard to this issue; therefore, this claim is dismissed.

The record supports these findings.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's dismissal of the petition.

_____
ALAN E. GLENN, JUDGE

-6-