IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 14, 2004 at Knoxville

## CHRISTOPHER DUWAN ROBERTSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 99-C-1579     Cheryl Blackburn, Judge**

_____

**No. M2004-00556-CCA-R3-PC - Filed April 19, 2005**

_____

The petitioner, Christopher Duwan Robertson, appeals the dismissal by the Davidson County Criminal Court of his petition for post-conviction relief. After review of the record, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

David M. Hopkins, Nashville, Tennessee, for the Appellant, Christopher Duwan Robertson.

Paul G. Summers, Attorney General & Reporter; Rachel E. Willis, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The petitioner stands convicted of first degree murder, *see* Tenn. Code Ann. § 39-13-202(a)(1) (2003), and is presently serving a life sentence. *State v. Christopher Duwan Robertson*, No. M2001-00976-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Nashville, Oct. 2, 2002). The following summarizes the evidence presented at the petitioner's trial in the light most favorable to the state, as the jury's guilty verdict accredited this version of the evidence. *See State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). On February 21, 1999, the petitioner shot Tonya Denise Battle, a fellow resident of the Preston Taylor Homes in Nashville, Tennessee. *Christopher Duwan Robertson*, slip op. at 1-3. The petitioner's girlfriend, Karen Mullins, testified that the petitioner had been living with her at the time of the shooting. *Id.* at 3. On the day of the crime, Mullins and a friend of the petitioner's, Mario Newbern, both heard the petitioner threaten to kill the victim. *Id.* at 4, 6. Later, the petitioner told the victim that a man in another housing development wanted a "trick," and the victim agreed to go. *Id.* at 4. The petitioner, Newbern, Michael Simpson, and the victim left shortly thereafter. *Id.* When walking to the other housing development, the petitioner shouted "Bitch!" and then shot the victim. *Id.* at 6-7. The petitioner threatened to kill Simpson and

Newbern if they told anyone about the shooting. *Id.* at 6-8. The petitioner then walked to Mullins' apartment and told her that she no longer had to worry about the victim because she "ain't talking." *Id.* at 6.

The medical examiner was unable to determine the type of bullet used to shoot the victim. *Id.* at 8. Newbern testified that earlier on the day of the shooting, the petitioner gave him a .22 caliber automatic weapon so that Newbern could help the petitioner commit a robbery. *Id.* at 5-6. After the robbery, the petitioner reclaimed the weapon. *Id.* at 6.

In his direct appeal, the petitioner challenged the sufficiency of the evidence to support his conviction, the trial court's failure to give certain jury instructions, and the trial court's failure to declare a mistrial after the victim's mother testified that the petitioner had been involved in another murder. *Id.* at 1. This court affirmed the judgment of the lower court. *Id.* at 19.

The petitioner subsequently filed a post-conviction petition alleging that he received ineffective assistance of counsel. The post-conviction court conducted an evidentiary hearing, and the petitioner and his mother testified on his behalf. Both the petitioner and his mother testified that the petitioner had a history of "acting out" and violent behavior and that between the ages of 14 and 16, the petitioner was in state custody at Cumberland Hall, where he received medication for his condition. The petitioner testified that although he relayed this information to his counsel, counsel did not further investigate the issue.

The petitioner also testified that his counsel failed to discuss any plea bargain offers with him, failed to advise him of his chances of success at trial, and failed to review the state's discovery with him prior to trial. The petitioner further complained that while his counsel objected to the fact that his jury pool contained no African Americans, counsel did so only after the petitioner drew the issue to his counsel's attention, and counsel failed to raise the issue on appeal. The petitioner also complained that counsel met with him only once or twice before his trial and that counsel failed to adequately investigate his case. On cross-examination, the petitioner admitted that a trial witness testified that he was not the shooter; however, he denied that his counsel was responsible for procuring that witness.

Next, the petitioner's trial counsel, who also represented the petitioner on direct appeal, testified at the post-conviction hearing. Counsel testified that he was appointed to represent the petitioner when the petitioner's former trial counsel ceased representing the petitioner. Upon receiving the petitioner's file, counsel hired a professional investigator, who interviewed all of the witnesses listed on the indictment. Counsel testified that he believed that he had sufficient information to conduct the petitioner's defense and recalled meeting with the petitioner five or six times before trial. Furthermore, he never had any concerns about the state of the petitioner's mental health nor felt the need to have the petitioner's mental health evaluated.

Regarding the petitioner's allegation that counsel should have appealed the issue of the lack of African Americans in the petitioner's jury pool, counsel testified that he did not believe

that the issue warranted appellate relief because to be successful on appeal, counsel would have had to demonstrate systematic exclusion. After researching the issue, counsel learned that a computer program randomly selected the members of the jury pool. Therefore, counsel concluded that he would be unable to prove systematic exclusion and, accordingly, did not pursue the issue on direct appeal.

Regarding the petitioner's claim that his counsel provided deficient performance by failing to object or request a mistrial after a trial witness testified that the petitioner was involved in another murder, counsel testified that he did not request a mistrial because the petitioner did not want him to do so. Counsel opined that the trial went as well as it could have for the petitioner, and although there was some damaging and prejudicial evidence, such as this witness's testimony, other testimony was beneficial to the petitioner and discredited the victim and some of the state's witnesses.

Regarding the petitioner's history of mental health problems, counsel testified that if he had been presented with the mental health records that the petitioner provided to the post-conviction court, he may have requested funds to have the petitioner's mental health professionally evaluated. Counsel further testified that the defense theory was mistaken identity, namely that the petitioner was being framed for this murder by witnesses who had a motivation to lie. The petitioner never admitted guilt to counsel, and therefore counsel never pursued a defense theory based on the petitioner's poor mental health.

Finally, counsel recalled that the state never made a plea bargain offer in the petitioner's case, and therefore counsel had no such offer to convey to the petitioner.

In the petitioner's instant appeal, he challenges the lower court's denial of his petition. The petitioner renews complaints that he received deficient representation because his counsel (1) did not discuss a plea bargain offer with him, (2) failed to investigate the petitioner's mental health history, (3) failed to request a mistrial after a witness made prejudicial statements, and (4) failed to raise on appeal the issue of the absence of African Americans in his jury pool. After thoroughly reviewing the record and applicable law, we affirm the judgment of the lower court.

The law is settled that the post-conviction petitioner bears the burden of establishing at the evidentiary hearing his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). An appellate court is bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

When a post-conviction petitioner seeks relief on the basis of ineffective assistance of counsel, he must establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.

1975). Also, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. *See id.* at 697, 104 S. Ct. at 2069.

In sum, a defendant is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 655 n.38, 104 S. Ct. 2039, 2050 n.38 (1984)).

Turning first to the petitioner's claim that his counsel failed to discuss any plea bargain offers with him, counsel testified and explained that the state was not interested in negotiating a plea agreement with the petitioner, and therefore he never received any plea offers to discuss with the petitioner. The post-conviction court accredited this testimony and found that the petitioner had failed to prove that counsel performed deficiently. We agree; counsel cannot be held deficient for failing to manufacture plea bargain offers from the state as the decision regarding whether to extend a plea bargain offer is solely at the state's discretion. *See State v. Head*, 971 S.W.2d 49, 51 (Tenn. Crim. App. 1997).

Next, the petitioner alleges that counsel failed to investigate his mental health history, which could have provided a basis for a defense theory. The post-conviction court noted that the mental health records that the petitioner submitted to the court for review chronicle the petitioner's mental health treatment from 1994 to 1995, during which time the petitioner was diagnosed with schizoaffective disorder and passive aggressive personality traits, for which he received medication. The post-conviction court reasoned that this "snapshot" of the petitioner's mental health from 1994 to January 1995 did not illuminate his mental condition on the date of the crime, February 21, 1999, or at the time of the petitioner's trial, July 24-26, 2000. The court, therefore, concluded that the petitioner had failed to present any evidence that he suffered from a mental condition at the time of his crime, or if he did suffer from a mental deficiency, that it would have provided a legal defense or rendered him incompetent to stand trial.

We find the post-conviction court's findings apt; to establish a viable mental defect defense theory, a defendant must present "psychiatric evidence that [he] lacks the capacity, because of mental disease or defect, to form the requisite culpable mental state to commit the offense charged." *State v. Hall*, 958 S.W.2d 679, 689 (Tenn. 1997). Evidence of the petitioner's mental state in 1994 and 1995 does not establish that he lacked the capacity to form the *mens rea* for first degree murder in 1999, and the petitioner offered no other evidence in the evidentiary hearing to establish that a defense based upon mental disease or defect would have been supportable or efficacious. Moreover, the petitioner and his counsel both testified that they did not believe that a mental health evaluation was needed prior to trial. Accordingly, we find that the petitioner has failed to establish either deficient performance or prejudice resulting from counsel's representation.

-4-

The petitioner also complains that his counsel provided deficient representation by failing to raise the issue on appeal of the lack of African Americans in his jury pool. However, the petitioner's counsel chose not to pursue this issue on appeal because he believed it lacked merit, and the petitioner has failed to demonstrate that if the issue had been raised, it would have entitled him to appellate relief. In *Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 668 (1979), the United States Supreme Court set forth a three-pronged test, which has been adopted by our supreme court, for determining whether a jury was properly selected from a fair cross-section of the community pursuant to the Sixth and Fourteenth Amendments. *See State v. Buck*, 670 S.W.2d 600, 610 (Tenn. 1984). Thus, in order to establish a *prima facie* violation of the fair cross-section requirement, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community;
> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
> (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren*, 439 U.S. at 364, 99 S. Ct. at 668. Counsel in this case testified that he challenged the composition of the petitioner's jury pool in the motion for new trial, but after further researching the issue, he decided not to pursue it on direct appeal because he did not believe he could prove systematic exclusion of African Americans from the venire. Specifically, counsel testified that he learned that the petitioner's jury pool was chosen by a race-neutral computer program that randomly selected the members of the jury pool. The petitioner failed to present any evidence at the post-conviction hearing to demonstrate otherwise. Accordingly, we find that counsel exercised proper discretion when deciding not to pursue this issue on appeal. *See Cooper v. State*, 849 S.W.2d 744, 747 (Tenn. 1993) (stating the court's policy of deference to the experience of appellate counsel when determining which issues are viable issues for appeal).

Finally, the petitioner contends that his counsel provided deficient representation by failing to request a mistrial after a state's witness testified that he had been involved in another murder prior to the homicide for which he was currently on trial. In the petitioner's direct appeal, this court addressed the issue whether the trial court erred by failing to declare a mistrial *sua sponte* after this testimony was admitted. *See State v. Christopher Duwan Robertson*, No. M2001-00976-CCA-R3-CD, slip op. at 18 (Tenn. Crim. App., Nashville, Oct. 2, 2002). We found that it was not plain error for the trial court to fail to declare a mistrial and further opined that "[t]he trial court's subsequent denial of a mistrial despite the lack of a request suggests that any request for a mistrial on the part of the defendant may have been futile." *Id.* Based upon our earlier finding that a motion for a mistrial would likely have been futile coupled with counsel's testimony, which was accredited by the post-conviction court, that he did not move for a mistrial at the petitioner's request, we find that the petitioner has failed to demonstrate that counsel performed deficiently by failing to move for a mistrial or that but for this omission, the result of his trial would have been different.

In sum, none of the petitioner's allegations of ineffective assistance of counsel warrant relief, and the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE