Tim DENTON, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee,
at Knoxville.

Dec. 4, 1996.

Permission to Appeal Denied by
Supreme Court March 3, 1997.

William Leibrock, Newport, for Appellant.

Charles W. Burson, Attorney General and Reporter, Christina S. Shevalier, Assistant Attorney General, Nashville, Alfred C.

Schmutzer, Jr., District Attorney General, James B. Dunn, Richard Vance, Asst. Dist. Attorneys General, Newport, for Appellee.

## OPINION

ROBERT E. BURCH, Special Judge.

Following a jury trial, Appellant was convicted of the crimes of aggravated rape, aggravated kidnapping and armed robbery. Co-defendant Wiley was convicted of aggravated rape and aggravated kidnapping. Two other co-defendants were acquitted of all charges. The convictions of Appellant and Wiley were affirmed on appeal.

After exhausting his direct appeals, Appellant filed a petition for post-conviction relief which was heard by the trial judge in due course. The basis of the petition was that his counsel at trial had been ineffective. At the conclusion of the hearing, the petition was denied. Appellant appeals the denial of his petition to this Court.

## FACTS

The facts which led to Appellant's conviction were that a bartender (the victim) requested that Appellant and Wiley, customers of the establishment, give her a ride home. After the three left the bar, the co-defendants drove the victim, against her will, to a secluded area of Cocke County. There, at gunpoint, they repeatedly raped her and forced her to perform oral sex upon each of them. They then drove to a local truck stop where Appellant forced the victim into his truck and Wiley left. Appellant then drove away from the truck stop, raped the victim and forced her to perform oral sex upon him. Appellant then returned with the victim to the truck stop where he encountered Wiley with five or six other men. Two of the men had sex with the victim while the other men stood around laughing and joking. Appellant and Wiley both exhibited pistols during this incident. At some point during this portion of her ordeal, the victim was able to escape and flee into the restaurant at the truck stop. The police were summoned and those involved were arrested.

At a pre-trial hearing, Officer Robert Caldwell testified that he had lost his notes and the pictorial line-up which was shown to the victim.

At the trial the victim (a deaf-mute) testified by means of a sign language interpreter. Prior to the trial, all four defendants had moved the trial court to appoint another interpreter for their use. This was denied, but leave was granted to use a second interpreter not compensated by the State.

A statement of Appellant to one Robert Jacobson was sought to be introduced at trial. The original statement made to Jacobson was that Appellant had held a gun to the victim's head while she performed fellatio upon Wiley and then Wiley had held a gun on the victim while she performed fellatio upon Appellant. In order to avoid a *Bruton* problem at this joint trial at which co-defendant Wiley did not testify, the statement was redacted to remove any reference to Wiley. The statement then was to the effect that Appellant held a gun to the victim's head while she performed fellatio upon Appellant. Thus redacted, the statement was admitted.

The jury found the defendant guilty as stated above. His conviction was affirmed on appeal. He then filed this petition for post-conviction relief, alleging ineffectiveness of counsel.

At the hearing on the petition, the trial judge found counsel to have been effective at the trial and denied his petition. Appellant appeals this decision to this Court.

## STANDARD OF REVIEW

In order to secure post-conviction relief in Tennessee, a defendant must prove an abridgment of a Federal or State constitutional right. T.C.A. § 40–30–105 (repealed and replaced by T.C.A. § 40–30–203 in 1995). To prevail on an ineffective assistance of counsel claim, the defendant must ultimately show that the adversarial process failed to produce a reliable result. *Cooper v. State,* 849 S.W.2d 744, 747 (Tenn.1993) [citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ]; *Butler v. State,* 789 S.W.2d 898, 899 (Tenn.1990) [also citing *Strickland v. Washington,* supra].

■ Proving failure of the adversarial process because of ineffective assistance of counsel requires the defendant to satisfy, by a preponderance of the evidence, both prongs of a two-pronged test. See *Butler*, supra at 899. First, the defendant must prove that counsel's performance was deficient in that it failed to meet the threshold of competence demanded of attorneys in criminal cases. *Butler*, supra at 899. Second, the defendant must prove actual prejudice resulting from the deficient performance. *Cooper*, supra at 747 (citing *Strickland*, supra at 687, 104 S.Ct. at 2064). Actual prejudice is established by demonstrating that, but for his counsel's deficient performance, the results of his trial would have been different and, thus, the adversarial process failed to produce a reliable result. *Best v. State*, 708 S.W.2d 421, 422 (Tenn.Crim.App.1985).

■ In post-conviction proceedings, the defendant has the burden of proving the claims raised in the petition by a preponderance of the evidence. *Wade v. State*, 914 S.W.2d 97, 101 (Tenn.Crim.App.1995); *Bratton v. State*, 477 S.W.2d 754 (Tenn.Crim.App. 1971). Specifically, the appellant herein has the burden of showing that there is a reasonable probability that but for counsel's error the result of the proceeding would have been different. *Best v. State*, supra. Findings of fact made by the trial court are conclusive on appeal unless the evidence preponderates against the judgment. *Cooper v. State*, supra at 746; *Butler v. State*, supra at 899. Accordingly, we are bound to affirm the judgment unless the evidence in the record preponderates against the trial court's findings. See *Black v. State*, 794 S.W.2d 752, 755 (Tenn.Crim.App.1990).

■ The court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy". *Strickland*, supra at 466 U.S. 689, 104 S.Ct. at 2065. We should defer to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State* 629 S.W.2d 4, 9 (Tenn.1982). Addi-

tionally, the court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct" *Strickland*, supra at 466 U.S. 689–690, 104 S.Ct. at 2065. Appellant is not entitled to perfect representation, only constitutionally adequate representation. *State v. Edward Leroy Harris* (unreported) Tenn.Crim.App. at Knoxville # 03C01–9311–CR–00381, 1996 WL 83014, opinion filed February 28, 1996.

## ANALYSIS

Appellant submits that his counsel at trial was ineffective and cites five instances which allegedly support his contention. These instances are that trial counsel failed to:

1). object to the use of only one interpreter for the victim (who was a deaf-mute); failed to object to the qualifications of the interpreter used; and failed to obtain an interpreter for Appellant;

2). object to the redacted statement used against Appellant at trial;

3). present Debbie Jones as a witness or to ask for a continuance when she was unavailable;

4). move for a continuance when the witness Ricky Hartsell was not available to testify even though a subpoena had been issued for him;

5). obtain a certified copy of the preliminary hearing transcript and the photo line-up made before the preliminary hearing.

We deal with each issue *seriatim.*

### Interpreter

■ Appellant submits that his trial counsel was ineffective in that counsel failed to object to the qualifications of the interpreter and failed to obtain a second interpreter to interpret independently for Appellant. We disagree.

Although a few opinions of the courts of this state have dealt with the question of the use of an interpreter, none have dealt with the question of the basic qualifications of an

interpreter for a witness who is deaf or deaf and mute.

Rule 604, T.R.E. requires that all interpreters (language and deaf-mute) be subject to the rules of evidence pertaining to the qualification of expert witnesses and any statute applicable to that particular type of interpreter. The rule also requires that the interpreter take an oath to "make a true translation".

Rule 702, T.R.E. contains the qualification requirements of expert witnesses and, therefore, interpreters. This rule provides that "a witness qualified as an expert by knowledge, skill, experience, training or education may testify ...".[1]

Of course, the trial judge has wide discretion in the matter of the qualifications of expert witnesses. *Otis v. Cambridge Mutual Fire Ins. Co.,* 850 S.W.2d 439 (Tenn.1992). The same logic would extend to interpreters as well.

In the case of deaf-mute interpreters, a specific statute governs the selection and qualification of a deaf-mute interpreter. This statute, T.C.A. § 24–1–103, sets out the procedure to be followed by the trial court in dealing with a party or witness who may be deaf and/or unable to speak.

In any proceeding before the court (or grand jury[2]), the statute requires the trial court to appoint a "qualified interpreter of the deaf sign language" to:

1). Interpret the proceedings to the deaf party or witness;

2). Interpret the deaf person's testimony; and

3). Assist in trial preparation with counsel.

T.C.A. § 24–1–103(b)(1).

Section (a)(3) of the statute defines a "qualified interpreter" as an interpreter certified by the:

1). National Registry of Interpreters for the Deaf; or

2). Tennessee Registry of Interpreters for the Deaf.

If an interpreter is not obtainable with one of the above certifications, the trial court must select an interpreter whose qualifications "are otherwise determined". In such case, the trial court would use the same procedure used to qualify any expert witness.

In addition to the certification mentioned above, the trial court must attempt to obtain the services of a qualified interpreter (as set out above) with a Legal Skills Certificate or a Comprehensive Skills Certificate[3] before accepting the services of an interpreter who does not possess such certificate. T.C.A. § 24–1–103(a)(3).

The request for a deaf interpreter must be channeled through the following agencies in order of preference:

1). local interpreter referral centers for the deaf;

2). Tennessee Registry of Interpreters for the Deaf;

3). Tennessee Council for the Hearing Impaired; or

4). Department of Education, Division of Vocational Rehabilitation.

T.C.A. § 24–1–103(e).

After a qualified interpreter is selected, the court and the deaf person are required by T.C.A. § 24–1–103(a)(3) to make a prelim-

---

**1.** A person who is engaged in discharging the duties of an interpreter is a witness and his conduct is subject to careful scrutiny. 98 *C.J.S.* Witnesses § 326.

**2.** *Failure of the prosecution to provide a competent and qualified sign interpreter to assist two witnesses with profound hearing and speech impairment during a grand jury presentation required dismissal of the indictment, since the defendant's due process rights may have been violated, where no advance effort was made to ascertain the level of sign lan-* guage communication skills possessed by the witnesses or whether they comprehended the oath administered to them, and many of the witnesses' answers seemed unclear and unresponsive. *People v. Rodriguez* 145 Misc.2d 105, 546 N.Y.S.2d 769 (1989).

**3.** The Registry of Interpreters for the Deaf no longer offers the Comprehensive Skills Certificate. The replacements therefor are the Certificate of Interpreting and the Certificate of Transliteration. The latter certificates are not as yet recognized by the statute.

inary determination that the interpreter is able to readily communicate with the deaf person and is able to accurately interpret the statements of the deaf person and interpret the proceedings in which the deaf person may be involved. This procedure is more important than it may seem at first reading. The trial judge should be aware that, although the statute seems to assume that there is only one deaf-mute sign language (See T.C.A. § 24–1–103(b)(1) "... the deaf sign language ..."), there are actually several very different sign languages used to communicate with deaf people. 50 A.L.R.4th 1188, 1194. The trial judge should not assume that a qualified interpreter can automatically communicate with any deaf person. Allowance should be made for this fact in order to prevent inconvenient surprises during the course of the trial.

Once the deaf interpreter is determined to be qualified and able to communicate with the deaf person, both Rule 604 T.R.E. and T.C.A. § 24–1–103(f) require the interpreter to take an oath to accurately translate the testimony from and questions to the deaf person. The statute sets out with particularity the requirements of the oath:

> Such interpreter shall make an oath or affirmation that such interpreter will make a true interpretation in an understandable manner to the deaf person for whom he is appointed and that such interpreter will interpret the statements of the deaf person desiring that statements be made, in the English language to the best of such interpreter's skill and judgment.

After this has been accomplished, the interpreter may discharge the duties of an interpreter in the trial. It is usual to require the interpreter to be impersonal and to require the attorneys to direct all questions to the witness in the second person. These questions must then be repeated by the interpreter with any remarks of his own. The answers must be repeated literally by the interpreter in the first person, without any remarks of his own. 98 *C.J.S.* Witnesses § 326. It should be noted that T.C.A. § 24–1–103(f) requires the trial judge to recess the proceedings when the interpreter so re-

quests. Although it may not be immediately apparent to the observer, deaf-mute signing is an extremely taxing activity both upon the interpreter and the client. The trial judge should be aware of this fact and should schedule the proceedings in such a manner as not to overly exhaust the interpreter and client. In addition, the trial court should consider granting greater leeway in allowing leading questions, narratives and similar devices to interrogate the witness because of the difficulties of communication inherent in a situation involving a deaf-mute witness. 50 A.L.R.4th 1188, 1194.[4]

We now apply the law as set out above to the facts of Appellant's trial.

■ T.C.A. § 24–1–103 requires the trial judge to channel requests for an interpreter through the agencies listed therein. The record shows that the interpreter came from the Knoxville Area Communication Center for the Deaf (a local interpreter referral center as listed in the statute).

■ The interpreter must be qualified as set out in T.C.A. § 24–1–103(a)(3). Since the interpreter came from the local interpreter referral center as listed in the statute, we must assume that the interpreter was both qualified and certified as required by the statute. The statutory language indicates a legislative intent that certification according to the statute constitutes proof of the interpreter's "knowledge, skill, training or education". We, therefore, hold that if an interpreter is certified in the manner required by the statute, a rebuttable presumption arises that the interpreter is qualified to interpret in trial proceedings. The attorney for the co-defendant, in seeking an additional interpreter for all defendants, announced to the trial court that the Knoxville Area Communication Center for the Deaf furnished "qualified, expert interpreter(s)". In addition, the record shows that the trial court found the interpreter to be a "certified interpreter" during the pre-trial qualification portion of the trial. Finally, in the appeal of the original trial of this case a panel of this court found the interpreter to have been a "certi-

---

**4.** In fact, it is usual and proper to do so. 98 *C.J.S.* Witnesses § 332.

fied interpreter". *State v. Tim Denton and Charles Wiley* (unreported) Tenn.Crim.App. at Knoxville # 168 Opinion filed February 12, 1992 at page 2 of the slip opinion, 1992 WL 24058.

T.C.A. § 24–1–103(b)(1) requires the trial judge to appoint a "qualified interpreter" to:

1). interpret to the witness;

2). interpret the witness' testimony; and

3). assist in preparation with counsel.

At the pre-trial hearing, the trial court examined the qualifications of the interpreter and appointed her to interpret for the witness. In the pre-trial hearing, the state referred to an order appointing the interpreter which does not appear in the record before us. There is no indication in the record that the interpreter assisted in preparation with counsel nor is there any indication therein that this assistance was requested. In any event, counsel had the experience of the witness' testimony at the preliminary hearing and the use of an interpreter to interview the witness would have been of little value. In addition, the testimony of the victim at trial indicates that her normal method of communication was by writing notes. Counsel could, had they desired, interviewed this witness without the need of an interpreter. The statute was complied with by the trial court.

■ The trial court did not conduct a formal preliminary determination that the interpreter was able to readily communicate with the witness and was able to interpret the proceedings to the witness and the statements of the witness in response to questions. This determination is required by T.C.A. § 24–1–103(a)(3) but the procedure therefor is not contained therein. Failure to make this determination outside of the presence of the jury may amount to reversible error. See e.g. *Kley v. Abell* 483 S.W.2d 625 (Mo.App.1972). During the pre-trial motions the record reflects that the trial judge closely watched the interaction between interpreter and client. On at least one occasion, the trial judge instructed the interpreter and the witness on proper trial procedure. Although not the recommended procedure, we hold that this action by the trial judge substantially complied with the requirements of the statute. Obviously, a defendant is entitled to a qualified interpreter at the hearing of a pre-trial motion as well as at the trial. We have reviewed the record and satisfied ourselves that the interpreter communicated effectively with the witness and that no prejudice to Appellant occurred by the use of this procedure. In fact, the interpreter translated an obviously inaccurate statement by the witness concerning the shirt which Appellant was wearing. Appellant used this testimony both in the hearing and at the trial. It was obvious from the context of the witness' entire testimony that the inaccurate statement was what the witness intended to say. The interpreter demonstrated her qualifications to our satisfaction.

■ Before beginning the hearing, an oath was administered to the interpreter. The record shows that the oath administered was as follows:

Do you solemnly (sic) swear that you will justly, truly and impartially interprete (sic) to the jury and the court and the attorneys and the public the oath about to be administered to you and the questions which may be asked of the victim and the answers that she shall give to such questions relative to the cause now under consideration before the court, so help you God?

The statutory oath essentially requires the interpreter to swear or affirm that the translation of the questions to the witness and the responses from the witness shall be accurate and understandable to the best of the interpreter's judgment and skill. While the form of the oath administered is somewhat unfortunate, we hold that it substantially complies with the requirements of the T.C.A. § 24–1–103(f).

Thus, the interpreter was qualified and the procedure used by the trial court to appoint, qualify and swear the interpreter was in accordance with the statutory procedure. Trial counsel's performance cannot be held to be deficient for declining to object to a procedure which was unquestionably proper. See *State v. Cecil C. Johnson* (unreported) Tenn. Crim.App. at Nashville # 83–241–III opinion filed January 20, 1988.

The remaining question is whether trial counsel's performance was deficient for failing to object to the use of only one interpreter and for failing to obtain an interpreter for Appellant.

Trial counsel did move the court prior to the trial to appoint a second interpreter. This written motion is contained in the record before us. In the argument of pre-trial motions, this motion was actually argued by counsel for the co-defendant on behalf of all defendants. It was admitted by said counsel that the interpreter would have come from the same agency. The trial judge declined to appoint an interpreter for the defendants at trial but allowed them to obtain an interpreter using their own funds if they so desired. These funds were available through the office of the District Public Defender. The trial judge noted that this particular interpreter had satisfactorily worked in his court on previous occasions.

The motion was made on behalf of all four defendants and was denied. Further objections were unnecessary. No more can be expected of counsel.

Appellant submits that trial counsel failed to object to the use of only one interpreter. Counsel moved to have a second interpreter appointed as stated above. This motion has the same effect as an objection to a single interpreter. Obviously, Appellant is incorrect in his assertion and the issue is without merit.

The only remaining question was whether the failure of counsel to hire a second interpreter from funds available through the office of the District Public Defender constituted ineffective representation of Appellant.

Leo Bearman, Jr., esq. in his article "Competency and Impeachment of Witnesses" 57 Tenn.L.Rev. 89 (1985) writes concerning the use of a second interpreter:

> The attorney representing each party in a case would be prudent to have an interpreter available to call the court's attention to any errors or mistranslations asserted by the interpreter who is translating the witness' testimony for the jury. By following this procedure, asserted discrepancies can be timely presented to the court for a decision. Another alternative would be to have the original testimony recorded and make the recording part of the official court record for review. With this alternative, however, the error would only be seen upon review and not in court when the testimony is given.

Supra at 91.

Although the learned Mr. Bearman was obviously referring to language interpreters, the reasoning holds in the use of deaf interpreters as well. The practice of having a second interpreter is obviously prudent.[5] The question before us, however, is whether the failure to have a second interpreter amounts to deficient performance by trial counsel. Given the facts of this case, we answer the question in the negative.

In considering claims of defective performance by trial counsel, the court must "address not what is prudent or appropriate, but only what is constitutionally compelled". *Burger v. Kemp* 483 U.S. 776, 794, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987).

As counsel for the co-defendant stated in the pre-trial motions, a second interpreter would have come from the same facility as the first. Presumably, their skills would be very similar. It is unlikely that any discrepancies in translation would have occurred.

We have carefully reviewed the record of Appellant's trial and find no indication that the interpreter did anything other than accurately translate for the witness. In the pre-trial motion to suppress, as we have stated above, the interpreter accurately translated the witness' misidentification of the shirt which Appellant was wearing, to Appellant's potential benefit. Upon close questioning, the witness persisted in her description of the shirt. This indicates that the interpreter was accurately translating even that which the interpreter could see to be incorrect. During the victim's testimony at trial, the interpreter properly interrupted the questioning of the witness to explain that the word "threat" did not translate accurately

---

5. Interpreters are subject to impeachment. *Pruitt v. Alabama* 168 So. 149, 232 Ala. 421.

into sign language and that the victim was not indicating an understanding of the term. In so doing, the interpreter prevented the possibility of a misunderstanding. The performance of this interpreter, as shown in the record, demonstrates her qualifications and ability. There is certainly no indication that a second interpreter would have benefited Appellant in any way. To fail to have a second interpreter present simply for the unexpected eventuality that some mistranslation may possibly occur cannot be said to be an omission which would rise to the level of a constitutional deprivation of the right to counsel.

We find no deficiency in the manner in which trial counsel handled the entire matter of the interpreter.

### Use of Redacted Statement at Trial

 Appellant insists that the failure of his trial counsel to object to the admission into evidence of his redacted statement to witness Robert Jacobson constituted ineffectiveness of counsel. We disagree.

At the hearing of the post-conviction relief petition, both trial counsel and the trial judge remembered that Appellant's trial counsel objected to the statement. We have unsuccessfully searched the record for such objection. Although we do not doubt trial counsel and the learned trial judge, if the objection is not contained in the record we must assume that such objection was never made.

The initial question is whether the use of the redacted statement made by Appellant to Robert Jacobson, a private citizen, was error.

The vast majority of the cases which deal with this subject analyze the issue with respect to the "Rule of Completeness". This rule is now contained in Rule 106, Tenn. R.Evid.

> When a writing or recorded statement or part thereof is introduced by any party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Since Appellant's statement to Mr. Jacobson was an oral one which was not recorded,

it does not fall within the rule. *§ 106, Tennessee Law of Evidence* 3d Ed. Cohen, Paine & Sheppeard. It should be noted also that this rule is one of timing rather than admissibility. The remainder of the statement or writing is to be admitted at the time that the portion is admitted. The rule assumes that the remaining portion of the statement would be ultimately admissible.

No case that we have found deals with the admissibility of testimony concerning a portion of a statement which was not recorded or written. It is not necessary to address that distinction herein. Even assuming *ab arguendo* that oral statements are to be treated the same as a recorded or written statement in this respect, there was no error on this issue in Appellant's trial.

 It is true that when the state introduces only part of a defendant's confession as evidence, the defendant is normally entitled to prove the whole of what was said in order for the jury to be able to weigh the whole statement. *Curry v. State* 217 Tenn. 257, 397 S.W.2d 179 (1965). This right, however, does not extend to confessions involving a non-testifying co-defendant. *State v. Brett Patterson* (unreported) Court of Criminal Appeals at Nashville # 88–245–III, 1989 WL 147404, opinion filed August 8, 1989. To hold otherwise would be to render impossible the use of a redacted statement in joint trials involving a *Bruton* situation. Supra.

This does not end the inquiry, however. On numerous instances we have indicated a willingness to consider a situation in which the use of a redacted confession unfairly prejudiced a defendant. See e.g. *State v. Runako Q. Blair* (unreported) Court of Criminal Appeals at Jackson # 02C01–9411–CR–00249, 1995 WL 695135, opinion filed November 11, 1995; *State v. Andre Lenard Holliday et al.* (unreported) Court of Criminal Appeals at Jackson, Shelby County # 28, 1987 WL 9448, opinion filed April 15, 1987; and *State v. Anthony D. Davis et al.* (unreported) Court of Criminal Appeals at Knoxville # 954, 1986 WL 13265, opinion filed November 25, 1986. Obviously, a statement cannot be redacted "in fairness", if to do so alters its substance or deletes therefrom sub-

stantially exculpatory information. *State v. Blair,* supra. See Rule 14(c)(1)(ii), Tenn. R.Crim.P.

We have reviewed the testimony concerning both the redacted and unredacted versions of Appellant's statement to Mr. Jacobson. The redaction cannot be viewed as deleting substantially exculpatory information. The redacted statement implicates Appellant in one crime, the unredacted statement in two crimes.

Although the redaction may have altered the facts to some degree, the substance of the statement remains, to wit: The victim was forced at gunpoint by appellant to commit fellatio. Whether it was fellatio upon appellant or some other person is immaterial as to whether appellant committed a crime. Appellant could only have benefitted from the redaction. At an individual trial, the entire statement would have been admissible. This would certainly not have benefitted the appellant.

There was no error in the admission of this statement. An objection thereto would have been properly overruled. Appellant does not demonstrate that trial counsel was ineffective in this respect.

### Failure to Produce Witnesses

■■■ Appellant contends that counsel was ineffective when she failed to present Debbie Jones as a witness or to ask for a continuance when she was unavailable. In addition, he insists that counsel was ineffective because she failed to move for a continuance when the witness Ricky Hartsell was not available to testify even though a subpoena had been issued for him.

At the hearing of the petition for post-conviction relief witness Brenda Grooms Elliot, the mother of one of the acquitted defendants, testified that Ricky Hartsell was the pimp of the victim and that he attempted to extort money from her in exchange for dropping of the charges by the victim. She also testified that Hartsell made the same proposition to defendant Wiley in the witness' presence. Ricky Hartsell himself was not called to testify.

Trial counsel for appellant testified that, at the time of the trial, a capias for criminal charges against Ricky Hartsell had been pending for four or five months. When the trial began Hartsell continued to be at large. As luck would have it, Hartsell was apprehended "as the trial came to a conclusion".

We initially observe that a request for continuance at the beginning of the trial would have been properly denied. Trial counsel would have been unable to demonstrate that the requested witness could have been produced within a reasonable time. In addition, the trial judge astutely observed that all of this activity by Hartsell was not connected to the victim. There was no showing that the victim knew anything about Hartsell's actions.

Prospective witness Debbie Jones was the clerk at the Publix station at which some of the activities of the night of the crime occurred. She supposedly observed the victim sitting alone and "unattended" in a car in the parking lot for about forty-five minutes.

At the post-conviction hearing trial counsel testified that she had been unable to determine the witness' whereabouts or even her last name in spite of investigation. Counsel determined that the witness had moved to Morristown but could not find her location.

Obviously, to issue a subpoena without a last name would have been an exercise in futility. A request for continuance would have been properly denied. Counsel could not have demonstrated that the witness could have been found within a reasonable time.

In short, appellant has demonstrated no ineffectiveness of counsel with respect to these witnesses.

The determinative issue in this respect, however, is the fact that neither witness was produced to testify at the hearing of the petition for post-conviction relief.

■■■ To succeed on his claim, the appellant must establish that he was prejudiced by counsel's failure to subpoena the witnesses. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish prejudice, he must: (1) produce the witness at his post-conviction hearing; (2) show

that through reasonable investigation, trial counsel could have located the witness; and (3) elicit both favorable and material testimony from the witness. *Black v. State,* 794 S.W.2d 752, 757 (Tenn.Crim.App.1990).

The appellant failed to produce either witness at his post-conviction hearing. He is, therefore, unable to establish that he suffered prejudice by counsel's failure to subpoena those witnesses. Even if trial counsel's performance had been deficient (which it was not), the appellant has failed to establish that he was prejudiced thereby. For this reason alone, the appellant cannot prevail in his claim of ineffective counsel. *Jones v. State,* 915 S.W.2d 1, 3 (Tenn.Crim.App. 1995). The issue is without merit.

### Failure to Present Evidence

 Appellant submits that his trial counsel was ineffective because she failed to obtain a certified copy of the preliminary hearing transcript for use at the trial. The petition for post-conviction relief and the brief are both silent as to why this alleged failure of trial counsel prejudiced appellant.

He further insists that his trial counsel was ineffective because she failed to inquire at trial about the loss by the officer of his notes of the description given by the victim to the officer and the photographic line-up made before the preliminary hearing. Appellant has not stated in his brief how the introduction of the photographic line-up would have benefitted him. He has failed to demonstrate how this alleged error by trial counsel would have influenced the outcome of the case.

Likewise, appellant has failed to demonstrate the prejudice of failing to present to the jury the fact that Officer Caldwell had lost his notes concerning the initial description of appellant given to him by the victim.

Appellant has the burden of showing that there is a reasonable probability that but for counsel's error the result of the proceeding would have been different. *Best v. State,* supra. He has utterly failed in this regard. Other than the bare facts of the occurrence, appellant has advanced no argument concerning how these imagined deficiencies by trial counsel inured to his detriment. No authority has been cited in support of appellant's position. The issue is waived. Rule 10(b), *Rules of the Court of Criminal Appeals.*

### CONCLUSION

The trial court dismissed appellant's petition for post-conviction relief, finding that he had not carried the burden of proving that the performance of trial counsel was deficient. On appeal, appellant has failed to establish that the trial court erred in so holding. In his order of dismissal, the learned trial judge found that trial counsel's performance "far exceeded the standards set forth in *Baxter v. Rose* and related cases". We agree.

The judgment of the trial court is affirmed.

WADE and TIPTON, JJ., concur.