IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 9, 2008

FRANK SMITH v. STATE OF TENNESSEE

Direct Appeal from the Criminal Court for Shelby County
No. 00-10325    W. Mark Ward, Judge

No. W2007-02773-CCA-R3-PC  - Filed October 13, 2008

The petitioner, Frank Smith, was convicted by a Shelby County jury of two counts of rape and sentenced to eight years on each count, to be served concurrently. He subsequently filed a petition for post-conviction relief, alleging he received the ineffective assistance of counsel. After a hearing, the post-conviction court denied his petition. Following our review, we affirm the judgment of the post-conviction court.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Jerri D. Mauldin, Memphis, Tennessee, for the appellant, Frank Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; and Summer Morgan, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

FACTS

The petitioner was indicted on two counts of rape, Class B felonies.[1] Our opinion on direct appeal provides a synopsis of the evidence presented at his trial:

The victim testified at trial that she was thirteen years old at the time of the rape. She said that she and a friend, April, were picked up from April's home by

_____

[1] From the record before us, it appears that one count charged rape by force; the other count charged rape by coercion.

April's boyfriend and his uncle, the defendant. She recalled that they rode from Tipton County to Memphis and arrived at the defendant's home. She said they all went into the house and the defendant said he wanted the victim to leave with him so that April and her boyfriend could have "some time alone." She said that she told April that she did not want to go with the defendant because she did not know him, but April told her it would be okay.

The victim testified that she left with the defendant. While riding in the car, he asked her if she drank. She replied that she did not, and he then asked her what she wanted to do. She replied that she did not know, and he took her to a hotel. She said that she told him she did not want to go to the hotel. The defendant became angry and told her that "if he wanted to treat [her] to let him treat [her]." She recalled that he went into the office, got a room key, returned to the car, and moved it away from the office. She said that they went into the room, and he locked the door. He told her to sit on the bed and take off her clothes so he could look at her body. She said she was scared and started to ask him not to have sex with her. He told her he just wanted to look at her body, but he would hurt her if he needed to. She said that she believed that he would hurt her.

She said she took off her clothes and, after he removed his clothes, he climbed into bed and had sex with her. She said that she was trembling badly and that he told her to stop because she was making him nervous. After the rape, they dressed and returned to pick up April and her boyfriend. She recalled that a woman was at the defendant's house and that he asked the boyfriend if "Dorothy" was mad at him for having company. The defendant returned the victim and April to a location near April's house, and they walked the rest of the way.

The victim said that she did not tell her mother about the rape because she did not want her to be hurt. She told a friend who had previously been sexually assaulted, about the rape because she believed she would understand. The friend told their school counselor who, in turn, reported the incident to the victim's mother. Her mother took her to the doctor and the victim provided a statement to law enforcement.

The victim testified that the defendant told her the rape was her fault because she told him she did not care what they did that night. She identified the defendant in the courtroom.

The next witness to testify was Dr. Loren Crown, a doctor in the emergency department at Baptist Memorial Hospital in Tipton County. He testified that the victim was examined at the hospital on September 2, 1999, by Dr. Naqui, the attending physician in the emergency department. He said that the victim's pelvic examination showed a ruptured hymen and positive cervical motion tenderness. He

-2-

said that the ruptured hymen could be the result of a number of things including sexual penetration. He testified that the positive cervical motion tenderness reflected that the victim was experiencing discomfort in her cervix which could have been indicative of inflammation in her uterus caused by trauma. He also said that, during their first pelvic examination, some thirteen-year-old girls may be "exquisitely sensitive." He said that clue cells were present in the victim's exam, which are correlated with sexual activity. He testified that the records reflected the diagnosis as sexual assault and pelvic inflammatory disease.

Next, Pramudhbhai Patel, the owner of the Rainbow Inn in Memphis, testified that the Rainbow Inn is a motel with rooms rented hourly and daily. His testimony, which was based on a work sheet from the hotel, was that a room was rented to the defendant for two hours on the night of August 28, 1999, from 9:57 p.m. until 11:57 p.m. The work sheet was made an exhibit, in addition to the registration card for the defendant. After Mr. Patel's testimony, the State rested its case, and the defense moved for a judgment of acquittal. The motion was denied, and the defendant was questioned about his decision not to testify.

The defense called one witness, Dorothy Jackson, a former girlfriend of the defendant. She testified that she has known the defendant since 1998 and that she was intimate with the defendant in August of 1999. She said that, around Labor Day weekend in 1999, the defendant picked her up around 8:30 or 9:00, and they went to the Rainbow motel on Jackson Avenue. She said that they stayed at the motel until 12:30, when the defendant's nephew paged him. She recalled that the defendant called his nephew and asked him for a ride somewhere but he told him he would take him the next day. She said this was the last time that she and the defendant had been intimate.

On cross-examination, Ms. Jackson said that she was contacted the day before trial by the defendant to testify on his behalf. She said that she was not aware that he had been charged with the crimes until the previous day.

State v. Frank Smith, No. W2005-01997-CCA-R3-CD, 2006 WL 3147058, at *1-2 (Tenn. Crim. App. Nov. 3, 2006). At the conclusion of the trial, the jury convicted the petitioner on both counts and he was sentenced to concurrent terms of eight years on each count.

Following an unsuccessful direct appeal, the petitioner sought post-conviction relief, arguing he received the ineffective assistance of counsel. The post-conviction court conducted an evidentiary hearing on November 2, 2007. At the hearing, the petitioner testified that he hired counsel as his attorney for trial and met with counsel "[e]very time it was a rescheduled court date." Aside from their meetings in court, the petitioner and trial counsel met "[o]nly one" time outside of court. At that meeting, the petitioner brought his nephew, Travis Smith, to meet with counsel about Smith testifying at the petitioner's trial. According to the petitioner, counsel told him not to worry about

getting other witnesses for trial because he was going to subpoena them. When he reported for jury selection, the petitioner discovered that counsel had not subpoenaed Dorothy Jackson, one of the witnesses he had suggested. Counsel told the petitioner "if you want her here, I will write you out a subpoena and you will be responsible for finding her and making sure she get[s] it."

The petitioner testified that trial counsel told him "there was no discovery" in his case – that "[a]ll there was, was an affidavit where the victim stated that [the petitioner] had taken her to some hotel on Jackson and raped her." The petitioner stated that he told counsel he would be willing to plead to a lesser-included offense even though he was not guilty because he wanted to get the "matter taken care of so [he] could go on with [his] life." However, counsel told him there were no lesser-included offenses for his charges and he could either "plead guilty to the charge or not guilty at all." Counsel promised to walk through the trial process with the petitioner, but the petitioner did not feel fully prepared for trial. He did not testify at trial because counsel told him "that he did not want [him] to take the stand in [his] own defense. He was going to utilize [his] witness." The petitioner elaborated that he did not testify at trial because counsel told him that his "witness was waiting in the witness waiting room waiting until [he took] the stand to let the judge know that [he] was not going to take the stand." The witnesses the petitioner expected to testify at trial were Dorothy Jackson, Travis Smith, and April Davis. Jackson and Smith were supposed to testify about the petitioner's alibi, and Davis was supposed to testify that "they talked to [the petitioner] while [he] was at the hotel and [he] did not meet them until the following day." After the petitioner told the court he was not going to testify, counsel called only Jackson as a witness.

The petitioner stated he did not feel that trial counsel fully pointed out inconsistencies in the victim's testimony. He thought counsel should have noted that the victim said the offense occurred on one date in her police statement and another date during trial. The petitioner said he asked counsel to question the victim about "what age did she give [him] and what was she wearing in disguising herself," but counsel did not ask those questions. The petitioner also thought counsel failed to fully argue his side to the jury with regard to the medical expert's testimony. He said counsel never discussed hiring his own expert. The petitioner felt counsel should have requested that the jury be charged on lesser-included offenses in light of the medical expert's testimony.

The petitioner testified he did not think he was present for the entire sentencing hearing because he noticed counsel "was already addressing or talking to the Court" when he entered the courtroom, and "that conversation maybe lasted . . . a good ten minutes, and [he] couldn't hear or understand . . . what's being said." The court then handed down his sentence without giving him "a chance to speak or present any witness or anything." The petitioner explained that he was upset because he could not hear everything said between counsel and the court, and he felt the conversation started before he entered the courtroom. The petitioner alleged that his attorney on direct appeal told him that trial counsel had told the appellate attorney he "was offered a lesser included charge or something," but the petitioner was never presented with an offer. The petitioner stated he wished to proceed in his post-conviction claim solely against trial counsel.

On cross-examination, the petitioner acknowledged it was the State's decision as to what an offer on a plea would be, not counsel's. However, the petitioner maintained that his attorney on appeal told him "he had spoken with [trial counsel] and [trial counsel] stated that [the petitioner] had been offered a lesser charge and probation and [the petitioner] refused it." Asked whether he knew that the State had offered him a plea on the charge of rape, the petitioner said he was "just now hearing it." The petitioner admitted he was shown a copy of the statement he made to the police but said he never received a copy of the victim's statement.

The petitioner acknowledged that Jackson testified at his trial but said counsel had not prepared her to testify. The petitioner maintained he was not aware that counsel had tried unsuccessfully to locate Jackson before trial, but he admitted she had moved from the address originally given to counsel. The petitioner acknowledged that counsel asked the medical expert about whether activities other than sexual intercourse could cause a ruptured hymen but said "he didn't offer to say anything else to the jury." The petitioner admitted that he told the court it was his decision not to testify, but qualified that it "was [his] decision with [trial counsel's] advice." The petitioner conceded that at trial he told the court he was satisfied with trial counsel's representation. He explained, however, trial counsel had told him those questions were part of the "procedure before they bring [his] witness on." On redirect examination, the petitioner stated he would have testified at trial had he known his two other witnesses were not going to be called to testify.

The post-conviction court questioned the petitioner about how he was prejudiced if he received the minimum sentence. The petitioner responded he "could have had a chance to discuss the percentage." The court explained that the percentage of service was not negotiable and asked if the petitioner wanted a new sentencing hearing. The petitioner conceded he did not want the case to be remanded for resentencing. The court also questioned the petitioner about why he thought he was not present for part of the sentencing hearing. The petitioner explained that he was waiting in the lockup area outside the courtroom, the door opened, and he saw trial counsel inside the courtroom having a discussion. The petitioner admitted that he could not hear what counsel was saying or discern to whom he was talking. He acknowledged that it was "possible" counsel was talking about someone else's case because he usually had more than one client at a time. The petitioner acknowledged that he was in the courtroom when the judge announced his sentence.

Travis Smith, the petitioner's nephew, testified that the petitioner talked to him about being a witness at his trial. Smith explained he was dating the victim's friend, April Davis, at the time of the alleged incident. Smith recalled that, on the day of the alleged incident, he called the petitioner at a hotel and asked for a ride to pick up his girlfriend. The petitioner told Smith he could not pick him up because he was at a hotel.

Smith recalled that he went with the petitioner to trial counsel's office, and counsel "got to questioning about April. He asked me did I know her last name and I told him I didn't. We got into some miscommunication and I left." Smith elaborated that "[a]fter he asked me her last name and I told him I didn't know it. He told me that I was -- in a way I was full of shit." Smith responded to counsel "[t]hat he can't be cursing at me and disrespecting me," and he left the office. When

asked if the petitioner tried to keep him from leaving counsel's office, Smith answered, "No. No. What he said is that he didn't feel like I would be the right person to put on the stand. So my uncle took me back to the house." Smith said he never received a subpoena to be at the petitioner's trial.

On cross-examination, Smith stated he did not know what day it was he called the petitioner at the hotel and asked for a ride. On redirect examination, he said that "April called me like two days later and said they was taking him to court for raping a young lady, but I didn't know what had went on." He elaborated that the call from April Davis came two days after he had called the petitioner at the hotel.

Trial counsel testified that he talked to the petitioner about his case "on numerous occasions." Asked whether the State made an offer to a charge less than rape, counsel responded that it "probably happened because there were so many times that thing was set for trial. But [the petitioner] did not want to hear that he would be found guilty. He . . . wanted a trial." Counsel noted that his file showed the State had made an offer of nine years at some point. Counsel said that had the State offered a lesser sentence, he "would have certainly conveyed it" to the petitioner.

When asked if he spoke to the three witnesses requested by the petitioner, trial counsel explained "there wasn't any way for [him] to put much credence" in Smith's testimony because Smith did not know his girlfriend's last name, and he could not testify to anything that would disprove the allegations against the petitioner. Counsel said that Smith "was going to testify that he had spoken to his uncle and his uncle was at a motel," but "that's what Miss Jackson testified to. The problem with that was that it was a different date entirely than when the rape was supposed to have occurred." Counsel stated that Jackson testified for the defense at trial, and the petitioner's "main complaint is that I told him to bring her in." Counsel recalled he had another person waiting in the witness room as a potential rebuttal witness, "but apparently what he had told me wasn't going to work. . . . So there wasn't anyway I could use him."

Trial counsel testified that he extensively cross-examined the doctor about "what could have caused the lack of hym[e]nal ring." With regard to the jury instructions, counsel recalled that the court charged several lesser-included offenses and there was some discussion with the court about additional charges. However, the court declined to give the additional charges. Counsel talked "at length" with the petitioner about whether he should testify. Counsel stated that the petitioner's defense was that he would not have had time to pick the victim up, drive to a motel, have sex with the victim, and drive her home in the time frame she alleged. Counsel brought out inconsistencies in the victim's statement and tried to show that "she was not telling the truth . . . or maybe telling the truth as she thought it, but that it wasn't [the petitioner]." Counsel maintained that he gave the petitioner a copy of his statement and they reviewed the medical report in counsel's office. Counsel did not think he received the victim's statement until after she testified as provided for by the Jencks Act.

With regard to the sentencing hearing, counsel stated that the State agreed to an eight-year sentence as long as the petitioner did not seek suspension of his sentence. Counsel said he knew

from his experiences in the trial judge's courtroom and the facts of the case that the petitioner would not be sentenced to less than ten years and "there was no way in this world that he was going to get a suspended sentence." Counsel thought the petitioner "got a great deal." Counsel acknowledged he talked to the trial judge before the petitioner entered the courtroom. He said that the petitioner was then

> brought out and I said, Judge, we have the sentencing hearing, and the State's got a recommendation. The Judge asked what was the recommendation. The State said eight years. And the Judge said, well, if that's what you all want to do. . . . I'm going to go ahead, and we'll accept the sentence and sentence him for eight years.

On cross-examination, trial counsel testified that when Travis Smith came to his office with the petitioner, he probably said to Smith "how in the hell can you testify when you don't even know the girl's name." Counsel said that "afterwards, I guarantee you I explained to [the petitioner] there wasn't any sense in using him. He couldn't help us." Counsel recalled that he talked to Jackson before she took the stand but did not remember whether he was ever able to locate Davis. Counsel did not see a motion for discovery in his file but explained, "I don't ever have any trouble with the State giving me what I'm entitled to." Counsel said he went over everything he received from the State with the petitioner.

When asked if he discussed trial tactics with the petitioner, trial counsel responded, "Based on my trial experience, it's better that you not lock yourself into a certain theory . . . because the State's got to go first and . . . they may have messed up[, but] I went over with him . . . his theory." Counsel could not specifically recall whether the State made an offer prior to trial but said, "I will swear on the lives of my grandchildren that if there was an offer made, and if I told [appellate counsel] he turned down a lesser crime, it was done, and he turned it down." Asked about the petitioner's decision not to testify, counsel said:

> [T]here he was without a record. I'm trying to get his theory out about the time situation . . . I didn't have anybody to examine or put on proof other than Mr. Smith about that. I would never have advised him, you better not take the stand. That's not what I do. I gave him his choices and he made that choice.

Counsel testified that he fully addressed the inconsistencies in the victim's statement and that her injuries were not conclusively caused by the alleged rape in his closing argument. When asked if he considered hiring his own expert, counsel responded, "I don't know for what. The only thing that he could have testified to was the expert -- expertise -- the only expert we had was the expertise of the doctor who was certainly testifying in our favor." Counsel said he discussed the sentencing agreement with the petitioner – that he "wouldn't just bring a guy out and say, okay, here you are, take it to eight years and go."

At the conclusion of the hearing, the post-conviction court entered a written order denying the petitioner post-conviction relief. The court resolved conflicting testimony in favor of trial

counsel and concluded that the petitioner failed to carry his burden of proof as to any of his claims.

## ANALYSIS

### Standard of Review

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See Wiley, 183 S.W.3d at 325; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

### Ineffective Assistance of Counsel

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. See U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different"). To satisfy the prejudice requirement of Strickland when alleging that counsel was ineffective for failing to offer testimony from a favorable witness, the post-conviction petitioner must "(1) produce the witness at his post-conviction hearing; (2) show that through reasonable investigation, trial counsel could have located the witness; and (3) elicit both favorable and material testimony from the witness." Denton v. State, 945 S.W.2d 793, 802-03 (Tenn. Crim. App. 1996) (citing Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)).

The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton, 945 S.W.2d at 796. As explained in Burns, 6 S.W.3d at 462, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

On appeal, the petitioner argues that this court should grant post-conviction relief because he received ineffective assistance of counsel at trial. He claims trial counsel was ineffective for a number of reasons.

First, the petitioner argues that counsel was ineffective for failing to investigate the case fully, including interviewing and subpoenaing possible defense witnesses. In this regard, the post-

conviction court noted counsel's testimony that he did not think Travis Smith would make a good witness or have anything to offer that would refute the guilt of the petitioner. The court found that counsel's decision not to have Smith testify was a legitimate trial tactic and strategy decision especially in light of the "vague testimony offered by Travis Smith in the post-conviction evidentiary hearing." The court observed that Dorothy Jackson testified at trial and "offered somewhat vague testimony that she last had sex with Petitioner at the hotel in question on Labor Day weekend of 1999." The post-conviction court also noted that the petitioner failed to call April Davis as a witness at the hearing; therefore, it was unknown whether her testimony would have been helpful to the petitioner.

Upon review, we agree that counsel's decision to not call Smith as a witness was a legitimate trial tactic, which this court will not second-guess. See Hellard, 629 S.W.2d at 9. In regard to Jackson, the petitioner has failed to show how he was prejudiced because she testified at trial, and he did not explain how her testimony would have been different had counsel spoken with her earlier. There is also some indication in the record that the reason counsel did not talk to Jackson before trial was because she had moved from the address the petitioner had given counsel, which militates against deficiency on the part of counsel. With regard to counsel's failure to call Davis at trial, the petitioner has failed to show prejudice because he did not present her as a witness at the evidentiary hearing. See Denton, 945 S.W.2d at 802-03. We also note that the record indicates counsel had two witnesses ready to call in surrebuttal, but the State did not put on any rebuttal proof. The petitioner has failed to prove this claim by clear and convincing evidence.

Second, the petitioner argues that counsel failed to request discovery from the State and provide him a copy of the discovery. The petitioner originally testified that counsel told him there was no discovery in his case, but he later admitted he received a copy of the statement he gave to the police. We note that the petitioner did not elucidate in his brief what specific item of discovery counsel could have, but did not, obtain. However, we glean from the petitioner's testimony at the evidentiary hearing that his contention is that he did not receive the victim's statement or medical records.

With regard to discovery, trial counsel testified that he gave the petitioner a copy of his statement and they reviewed the medical report together. Counsel said that he went over everything he received from the State with the petitioner. Counsel acknowledged he did not file a formal discovery motion but explained that he obtained discovery without having to file a motion. The post-conviction court resolved the conflicting testimony in favor of trial counsel.

Accrediting trial counsel's testimony that he reviewed the medical report with the petitioner, the petitioner's remaining contention is that he did not receive a copy of the victim's statement prior to trial. In addressing this contention, we note that statements made by state witnesses are not discoverable under Tennessee Rule of Criminal Procedure 16(2). See also Tenn. R. Crim. P. 26.2 (Tennessee's version of the Jencks Act, outlining the procedure for obtaining a witness's statement after the witness testifies at trial); State v. Taylor, 771 S.W.2d 387, 394 (Tenn. 1989) (holding that there is "no constitutional requirement that the State provide witnesses' statements prior to trial. The

rule is clear that the State has no obligation to produce statements of a witness until the conclusion of the witness'[s] testimony on direct examination."). As such, there was no deficiency on the part of counsel for failing to "discover" the victim's statement prior to trial.

Third, the petitioner argues that counsel did not meaningfully discuss defenses and trial tactics with him, including possible settlement of the charges. At the hearing, counsel testified he met with the petitioner on a number of occasions to talk about his case. Counsel said that the petitioner's defense was that "he would not have had time to do what [the victim] claimed, pick her up, take her to the motel, have sex with her, and then get her back home in the time frame [the victim] was saying." Counsel testified that he discussed the petitioner's theory with him but said he does not like to "lock [himself] into a certain theory" until after the State presents its case. In addressing prejudice, the post-conviction court found it most telling that the petitioner did not identify what defense or trial tactic counsel should have raised, leaving the court to speculate as to whether there was a defense or tactic available to the petitioner. Accrediting trial counsel's testimony as the post-conviction court did implicitly, we conclude that the petitioner has failed to prove deficiency or prejudice.

With regard to possible settlement of the charges, the petitioner testified that he told trial counsel he was willing to plead to a lesser-included offense. He claimed his attorney on appeal said trial counsel had told him there had been an offer on a lesser charge. Trial counsel testified that the petitioner received a nine-year settlement offer for a guilty plea to rape, but he did not accept it. Counsel said that had the State offered a lesser sentence, he "would have certainly conveyed it" to the petitioner. According to counsel, the petitioner wanted a trial. Counsel stated that if he told the appellate attorney there was an offer on a lesser charge, then it was true and the petitioner turned it down. We note that the petitioner did not offer testimony from his appellate attorney at the evidentiary hearing in support of his claim. The post-conviction court accredited trial counsel's testimony. As such, the petitioner has failed to prove that counsel was ineffective with regard to possible settlement of the charges.

Fourth, the petitioner argues that counsel did not "adequately discuss . . . the pros and cons of taking the stand in his own defense." The petitioner testified that he chose not testify at trial because counsel told him "that he did not want [him] to take the stand in [his] own defense. He was going to utilize [his] witness." Counsel testified that he talked "at length" with the petitioner about whether he should testify. When asked about the petitioner's decision not to testify, counsel said that he would have never advised him not to take the stand but would have given him his options and let him make the choice.

The post-conviction court did not accredit the petitioner's testimony that counsel promised to call two other witnesses, which was his alleged reason for not testifying. The court noted that the petitioner did not identify any improper influence, demands, or misrepresentations on the part of counsel leading him not to testify, nor did he testify at the evidentiary hearing as to what his testimony would have been. The court concluded that the petitioner did not carry his burden in

showing any deficiency on the part of counsel with regard to his decision not to testify or any resulting prejudice. After review, we agree with the post-conviction court's conclusion.

Fifth, the petitioner contends that counsel failed to adequately argue his case. Specifically, he argues that counsel did not attack inconsistencies in the victim's statements, highlight the insufficiency of the medical evidence of rape, or point out problems with the State's proof. We note that it is not entirely clear whether the petitioner is aggrieved with counsel's performance during cross-examination of the witnesses or closing argument. Addressing cross-examination, the transcript of the trial shows that counsel thoroughly cross-examined the victim and the medical expert. We discern no deficiency in counsel's performance in this regard.

Turning to closing argument, counsel testified that he fully addressed the inconsistencies in the victim's statement and that the victim's injuries were not conclusively caused by forcible sexual intercourse. We note that the record on appeal does not contain the closing arguments, hindering our review of this issue. The petitioner has provided no proof that counsel did not sufficiently argue his case other than his allegations – allegations that were directly contradicted by counsel. He has, therefore, failed to carry his burden of proving that counsel performed deficiently. The petitioner has also failed to show that there is a reasonable probability that the outcome of his case would have been different had counsel provided even more argument to the jury.

As an aside to this issue, the petitioner mentions that counsel never suggested hiring his own expert. We need not belabor this issue because the petitioner offered nothing to support that such action constitutes deficient performance in this case. He has not shown what another expert would have testified to and how that testimony would have changed the outcome of his case.

Sixth, the petitioner asserts that counsel failed to request jury instructions on lesser-included offenses. The record shows that the court instructed the jury on rape, sexual battery, and assault. The record also reflects that counsel requested additional charges, but the court declined to give any. At the evidentiary hearing, counsel testified that the court charged several lesser-included offenses and that the lesser-included charges that were given were to the petitioner's advantage. Counsel surmised that the court could have charged aggravated sexual battery but said that would have been to the State's benefit. The petitioner's argument on this issue consists of "[counsel] also never pushed the Court to place in the jury charge any lesser included offenses." The post-conviction court concluded that the petitioner "failed to show either deficient performance or prejudice." We agree with the post-conviction court's conclusion.

The petitioner lastly argues that counsel was ineffective at the sentencing hearing for "not having [him] present during said hearing and not seeking probation during this hearing." Initially, we note that the petitioner's proof in this regard consists of his speculation that the sentencing hearing started without him because counsel was speaking with the trial judge when he entered the courtroom. However, the petitioner admitted that he was present when his sentence was pronounced. Counsel agreed that he talked to the trial judge before the petitioner was brought into the courtroom but said that the petitioner was present during sentencing. The testimony at the evidentiary hearing

indicates that the petitioner was sentenced pursuant to a consent agreement with the State, meaning the actual sentencing hearing was, in all likelihood, very abbreviated. We note that a transcript of the sentencing hearing was not included in the record for our review. After review, we are unable to conclude that trial counsel performed deficiently or that any alleged deficiency caused the petitioner prejudice.

With regard to counsel not seeking probation, trial counsel testified that he discussed the sentencing consent agreement with the petitioner and discussed with him that the State agreed to an eight-year sentence if he did not seek suspension of his sentence. Counsel testified that based on his experiences in the trial judge's courtroom and the facts of the case, the petitioner would not be sentenced to less than ten years and "there was no way in this world that he was going to get a suspended sentence." The record shows that the petitioner received the minimum sentence for his convictions and that his ability to get the minimum sentence could have been compromised had he sought probation. At the evidentiary hearing, the petitioner told the post-conviction court that he did not want his case remanded for resentencing. As such, the petitioner has failed to prove either deficiency or prejudice.

## CONCLUSION

We conclude that the petitioner has failed to demonstrate, by clear and convincing evidence, that he was denied the effective assistance of trial counsel. Accordingly, we affirm the post-conviction court's denial of the petition.

_____
ALAN E. GLENN, JUDGE