.IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville November 15, 2011

## DERRICK LE'MON GOODE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 12189      Lee Russell, Judge**

---

**No. M2011-00529-CCA-R3-PC - Filed June 13, 2012**

---

The Petitioner, Derrick Le'mon Goode[1], appeals as of right from the post-conviction court's denial of his petition for post-conviction relief. The Petitioner contends that the post-conviction court committed error in finding that neither his general sessions court counsel nor his trial counsel rendered ineffective assistance as a matter of law. He cites six factual grounds supporting his claim and alleges that the cumulative effect of counsels' errors deprived him of his right to counsel and a fair trial. After an evidentiary hearing, the post-conviction court found that the Petitioner failed to show that either counsel's performance was deficient or that he was prejudiced by the alleged deficient performance. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**.

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Trisha A. Bohlen, Bell Buckle, Tennessee, for the appellant, Derrick Le'mon Goode.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel W. Harmon, Assistant Attorney General; Charles F. Crawford, Jr., District Attorney General; and Michael D. Randales, Assistant District Attorney, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

---

[1] It is the policy of this court to refer to petitioners' names as they are reflected in the initial post-conviction petition. However, we note that throughout the record the Petitioner is also referred to as "Derrick Lemon Goode," "Derrick Le-mon Goode," "Derrick Lamon Goode," and "Derrick L. Goode."

The following trial facts were summarized from the Petitioner's direct appeal. See State v. Derrick Lemon Goode, M2009-00508-CCA-R3-CD, 2010 WL 2852279, at * 1-2 (Tenn. Crim. App. July 21, 2010). On June 2, 2008, forgery warrants were issued against the Petitioner. The warrants alleged that the Petitioner passed stolen checks at the 82 Market and Deli (82 Market) in Bell Buckle, Tennessee and the Shelbyville Super Market (Shelbyville Market) in Shelbyville, Tennessee. The Petitioner was subsequently appointed counsel to represent him in general sessions court, who is hereinafter referred to as general sessions counsel. After waiving his preliminary hearing, the Petitioner's cases were bound over to the Bedford County Grand Jury on July 25, 2008.

The Petitioner was indicted for ten counts of forgery on August 18, 2008. The ten counts of forgery charged represented five forged transactions, with each transaction charged under two alternate theories. The Petitioner retained trial counsel[2] to represent him in the Bedford County Circuit Court. The trial was held on October 28, 2008; the following testimony was presented.

The victim, Loyd Curtis, Jr., testified that he lived in Shelbyville and that he and the Petitioner were former work associates. On March 28, 2008, Mr. Curtis sold the Petitioner a white 1989 Lincoln Town Car. Sometime later, he received letters informing him that he owed money to three convenience stores: 82 Market in Bell Buckle, Shelbyville Market, and Sav-A-Lot. Mr. Curtis went to each store and viewed copies of checks that had been written from a checkbook belonging to him. He then realized that he had left this checkbook in the car he sold to the Petitioner. Mr. Curtis testified that all the checks were signed in his name but that he had only signed one of the checks. The State introduced the following checks in support of the convictions at issue: (1) check 1071, payable to 82 Market; (2) check 1079, payable to 82 Market; (3) check 1069, payable to Derrick Goode; (4) check 1075, payable to Derrick Goode; and (5) check 1088, bearing a blank "Pay to the Order of" section.

Mr. Curtis explained that he closed the account upon which all of the checks at issue were drawn in November 2007, due to business issues. Mr. Curtis further testified that some of the forged checks contained driver's license and phone numbers that did not belong to him. He also said that he never authorized anyone else to use his account and received no consideration for the use of the checks. Mr. Curtis acknowledged on cross-examination that he went to the Sav-A-Lot where some of the other checks drawn on the same account were passed and watched video of a man passing the checks; this man was not the Petitioner. Mr. Curtis testified that he did not know who wrote the checks but stated that it was not him.

---

[2] Trial counsel was the Petitioner's trial and direct appeal counsel.

Prasant Maheta owned the Bell Buckle 82 Market in March 2008. He testified that his store required its cashiers to record the driver's license and phone number of any person paying with a check, but he admitted that his clerks did not always do so. Mr. Maheta explained that the Petitioner occasionally came into the 82 Market about two or three times a day, but not always every day, and that he knew the Petitioner as "Debow." Mr. Maheta testified that his store accepted checks 1071 and 1079, but he did not see who wrote the checks. After both checks were returned by the bank, Mr. Maheta called the Petitioner, who agreed to reimburse 82 Market. The Petitioner did not deny passing the checks and never claimed that someone else passed them. The Petitioner told Mr. Maheta that he had received the checks in payment for work he had done for Mr. Curtis. Mr. Maheta acknowledged that, if that were the case, then the checks should have been made payable to the Petitioner rather than 82 Market. As of trial, the Petitioner still had not reimbursed Mr. Maheta.

Detective Brian Crews of the Shelbyville Police Department investigated the forged checks in this case after receiving a report and copies of the checks. Det. Crews interviewed Roderick Brooks in jail, to whom check 1082 – not the basis for an offense charged against the Petitioner – was made payable, and he admitted his involvement with passing that check. Det. Crews also noted that check 1071 contained a driver's license number only slightly different from the Petitioner's driver's license number. Check 1079 contained a different, invalid driver's license number. However, check 1088, the check with a blank "Pay to the Order of" section, contained the Petitioner's correct driver's license number. Det. Crews testified that he tried to question the Petitioner about the checks, but the Petitioner was very defensive, as if he wanted a fight. On cross-examination, Det. Crews acknowledged that he had worked on cases before in which people have obtained and illegally used the driver's license number of another.

The Petitioner did not testify at trial and presented no evidence in his defense.

On October 21, 2008, a jury found the Petitioner guilty of all ten counts of forgery. The court merged the convictions based on alternate theories, leaving the Petitioner with five forgery convictions. He was sentenced as a Range II, multiple offender to consecutive service of three years and six months for each forgery conviction at thirty-five percent, for an effective sentence of seventeen years and six months in the Department of Correction.

The Petitioner then filed a timely motion for new trial, which was denied. He then perfected an appeal to this court, with the assistance of trial counsel, and this court affirmed the Petitioner's convictions and sentences on July 21, 2010. Derrick Lemon Goode, 2010 WL 2852279, at * 2.

*A. Post-Conviction Petition*

On November 30, 2010, the Petitioner filed a pro se petition for post-conviction relief. Counsel was appointed and, subsequently, filed an amended petition on January 18, 2011. The Petitioner raised the following issues in his petition requesting post-conviction relief.[3]

1.    Did [general sessions counsel] provide ineffective assistance of counsel by not conducting a preliminary hearing at the General Sessions Court level?

2.    Did [general sessions counsel] provide ineffective assistance of counsel by not resolving the case at the General Sessions Court level?

3.    Did [general sessions counsel] and [trial counsel] provide ineffective assistance of counsel by failing to interview potential witnesses at the store and elsewhere, by failing to present such witnesses at a preliminary hearing ([general sessions counsel]) and at trial ([trial counsel]), by failing to visit the stores where the checks were passed, and by failing to view and present at trial videotapes of the passing of the various checks at a preliminary hearing ([general sessions counsel]) and at trial ([trial counsel])?

4.    Did [trial counsel] provide ineffective assistance of counsel by failing to submit the allegedly forged documents to a handwriting expert and by failing to present such expert at trial?

5.    Did [trial counsel] provide ineffective assistance of counsel by failing to object to the testimony of prosecuting witness Detective Brian Crews and by failure adequately to cross-examine the various witnesses for the State and by failing to object to other unspecified evidence offered by the State?

6.    Did [trial counsel] provide ineffective assistance of counsel by failing to object to unspecified jury instructions?

7.    Did [trial counsel] provide ineffective assistance of counsel by failing to explain adequately to the Defendant his right to testify at trial?

8.    Did [trial counsel] provide ineffective assistance of counsel by purposely

---

[3] The post-conviction court summarized the nineteen issues presented by the Petitioner in his pro se and amended petitions into the following nine issues.

sabotaging the Defendant's direct appeal?

9.     Was the Defendant denied due process as a result of the State's failure to provide exculpatory evidence in the form of witness identifications and videotaped evidence of other parties passing the allegedly forged checks?

## B.  Post- Conviction Evidentiary Hearing

An evidentiary hearing on the consolidated petitions was held on January 21, 2011. The Petitioner, general sessions counsel, and trial counsel testified at the hearing. The Petitioner testified that general sessions counsel failed to properly interview witnesses because he should have gone to the stores where the alleged forgeries took place and questioned the clerks about the person passing the checks. The Petitioner explained that the store clerks would have been able to clear up the misconception that he passed the stolen checks. Additionally, the Petitioner claimed that general sessions counsel's failure to interview witnesses and otherwise prepare for the preliminary hearing precluded the resolution of the case at the general sessions level. He insisted that the case could have been resolved prior to reaching the Circuit Court if general sessions counsel had interviewed witnesses, investigated the case, and conducted the preliminary hearing.

General sessions counsel testified that the Petitioner expressed his intent to retain another attorney in their very first meeting, which was prior to a bond hearing. General sessions counsel explained that he did not see a need to interview the Petitioner any further at that time because bond hearings were "always continued," and he knew that they would have another meeting to ascertain whether the Petitioner would in fact retain new counsel. General sessions counsel then explained that at their next meeting the Petitioner stated that he could not afford to hire counsel, so counsel began to interview the Petitioner. General sessions counsel also explained that he was not really in a position to interview witnesses at that time because he had not been provided any names or other discovery; he only had the names appearing on the warrant. He further explained that it was almost "impossible" to get the State to provide discovery at the general sessions level. General sessions counsel explained that he did not receive any information about the State's evidence against the Petitioner until counsel conveyed to the arresting officers the Petitioner's desire to waive the preliminary hearing, asking them to cooperate with him. At that time, they showed counsel pictures from which the Petitioner was identified.

General sessions counsel testified that he had been practicing law for about eight years when he acquired the Petitioner's case. He also testified that approximately ninety percent of his practice has been devoted to criminal law, that he has represented people in other

counties in Middle Tennessee, and that he has tried other forgery cases. General sessions counsel explained that he has practiced in front of the general sessions judge countless times.

The essence of the Petitioner's testimony regarding trial counsel was (1) that counsel did not consult or retain a handwriting expert to show that the Petitioner did not sign the checks; (2) that he did not obtain and admit the Sav-A-Lot, 82 Market, and Shelbyville Market videos at trial; (3) that he failed to properly prepare, interview and call witnesses for trial; (4) that he failed to interview witnesses, Roderick Brooks and William Smith, who could have established that the Petitioner was not responsible for the offenses charged, and (5) that he failed to call the same witnesses at trial.

First, the Petitioner insisted that trial counsel should have hired a handwriting expert or at least informed him of the benefit in retaining one for trial. The Petitioner explained that the handwriting expert could have proven that he did not sign the checks at issue, and trial counsel's failure to retain such expert left the defense with no way of contradicting the evidence presented by the State. The Petitioner did not present a handwriting expert at the evidentiary hearing.

Second, the Petitioner argued that trial counsel was ineffective because he failed to go to the Sav-A-Lot, Shelbyville Market, and the 82 Market to retrieve their video surveillance recordings for admission at trial. He claimed that the Sav-A-Lot video would have shown who passed the checks there and that it was not him. The Petitioner also claimed that the Shelbyville Market and the 82 Market had video surveillance that would have also shown that he did not sign the checks, and this exculpatory evidence was critical to his defense. However, on cross-examination he admitted that the information about another person's passing of the Sav-A-Lot checks was presented to the jury. The Petitioner did not present any of these videos at the evidentiary hearing.

Third, the Petitioner contended that trial counsel failed to properly prepare for trial. When asked for specifics, the Petitioner simply summarized his previous testimony. The Petitioner testified that trial counsel could have asked the victim more questions about the Shelbyville Market because the victim might have seen those tapes during his personal investigation. The Petitioner also asserted that trial counsel could have asked Det. Crews "[s]omething that could have cleared [him.]" What, exactly, the Petitioner did not say. The Petitioner presented no evidence or witnesses at the hearing to support any of his assertions.

Finally, the Petitioner testified that trial counsel's failure to interview key witnesses, Roderick Brooks and William Smith, was another example of counsel's deficient performance. The Petitioner explained that these two individuals were originally indicted on the charges for which he was ultimately convicted. The Petitioner claimed that these two

individuals had knowledge that could have exonerated him, and this, in addition to the Sav-A-Lot video, would have shown that someone else wrote the checks; Brooks was the individual captured forging one of the checks in the Sav-A-Lot video. However, the Petitioner admitted on cross examination that he was never charged with the forgery at Sav-A-Lot. Neither of these witnesses was presented at the evidentiary hearing.

Trial counsel testified that he would have strongly suggested they retain a handwriting expert if the State was presenting one who intended to testify that the signatures were similar. However, trial counsel explained that it was ultimately a jury determination and that was why he introduced the Sav-A-Lot checks, so the jury could compare it with the signatures from 82 Market and Shelbyville Market for themselves. Trial counsel also explained that, ultimately, the jury never received a known sample of the Petitioner's handwriting from which to compare the signatures, so a handwriting expert was not needed.

Trial counsel testified that he contacted all the individuals that the Petitioner asked him to contact, and he visited both the 82 Market and the Shelbyville Market and inquired about the surveillance and clerks present on the dates of the alleged forgeries. Trial counsel explained that he did ascertain that there was a tape at the 82 Market, but the store had changed management by the time he was retained. He further explained that the new management had erased the old surveillance system and did not retain any information about the prior owner's employees. Trial counsel also explained that the Shelbyville Market did not have a video of the incident, and its system appeared inoperable during his visit. Although he did not have the videos, and neither did the State, trial counsel testified that he was able to use the absence of the videos in an effort to raise reasonable doubt. Trial counsel presented the testimony of Mr. Curtis stating that the Petitioner did not pass the Sav-A-Lot checks and suggested that all the videos captured the same individual, Brooks.

Trial counsel testified that he was never provided with the names of the clerks. Trial counsel explained that he attempted to locate the clerks, but the 82 Market and the Shelbyville Market had changed management and did not retain the same staff, thus he had no way of identifying or contacting those clerks. He admitted that one of the photo line-ups from which the Petitioner was identified contained a signature of a Clinton Page, presumably the clerk who identified the Petitioner as the individual who passed the forged checks. However, trial counsel admitted that he never attempted to contact this individual and could not remember whether he had otherwise spoken with him. Trial counsel testified that he received and produced discovery in a timely manner and investigated the evidence therein. Trial counsel also testified that he was prepared for and made objections during trial, all of which were sustained.

Trial counsel testified that both Roderick Brooks and William Smith had attorneys by

the time he was retained, and he would have needed their attorneys' permission to interview them. Trial counsel also testified that he had received a statement from Brooks in discovery, and Brooks' statement illustrated that Brooks would not be an exculpatory witness for the Petitioner; Brooks told the State during his interview that the Petitioner had some knowledge of or participation in the Sav-A-Lot forgery.

Trial counsel testified that he has practiced law for over thirty years, and over eighty-five percent of his experience has been devoted to criminal law.

The petition for post-conviction relief was denied by memorandum opinion and order on February 3, 2011. The trial court consolidated the Petitioner's sixteen overlapping contentions listed in his petition for post-conviction relief, and those added via the amended petition, and dealt with nine different factual scenarios addressed in the Petitioner's testimony in support of his assertion that both his general sessions and trial attorneys were ineffective.

Addressing the alleged issues involving general sessions counsel, the court reasoned that the case could not have been resolved at the general sessions level, unless the State agreed to reduce the felony charges to misdemeanors, and there was no evidence in the record to suggest that the State was willing to reduce the charges.

Regarding trial counsel's alleged errors, the court found that counsel's failure to hire a handwriting expert was not deficient for the following reasons: (1) because the State did not present a handwriting expert at trial; (2) because on direct appeal this court "note[d] a number of handwriting similarities between Check 1088, [which bore the Petitioner's driver's licence number] and Checks 1069, 1071, 1075, and 1079 that the jury could have used to conclude that the same person wrote all five" checks; and (3) because the Petitioner did not present a handwriting expert at the evidentiary hearing to illustrate the necessity of this testimony at trial. The court accredited trial counsel's testimony that the 82 Market and Shelbyville Market videos did not currently exist and concluded that admission of the Sav-A-Lot video was not required because the Petitioner was not indicted for that forgery, and the relevant information that the Petitioner did not commit that forgery was presented at trial.

Addressing trial counsel's failure to prepare for trial, the court explained that "there [wa]s simply no proof that there was any evidence, either the testimony of clerks or evidence on videotapes or the testimony of Co-Petitioners, which would have helped exonerate the [Petitioner]." The court also concluded that trial counsel's failure to interview Roderick Brooks and William Smith was not ineffective assistance, crediting trial counsel's testimony that both men had retained attorneys. The court further found that Brooks was not an exculpatory witness and explained that there was "simply no evidence that this failure to

interview [Brooks] resulted in any harm[.]"

In sum, the court concluded that the Petitioner was not deprived of his constitutional rights. Both general sessions counsel and trial counsel met an objective standard of reasonableness and were within the range of competence demanded of attorneys in criminal cases. Additionally, the court found that "[n]o decision by counsel, no action by counsel, and no inaction by counsel was proven to have been such as to render it reasonably probable that but for the conduct of the attorney, the result of the original case would have been different." The court also concluded that the prosecutor did not act inappropriately in any manner and dismissed the amended petition.

The Petitioner perfected a timely notice of appeal to this court on February 18, 2011.

## II. ANALYSIS

The Petitioner contends that the post-conviction court committed reversible error in finding that both his general sessions counsel and his trial counsel met the standard demanded of competent defense counsel. He cites in his brief the following facts in support of that contention: (1) that general sessions counsel failed to present evidence at the preliminary hearing to show that "it was someone other than himself who presented forged checks at three local markets"; (2) that trial counsel failed to adequately prepare for trial; (3) that trial counsel failed to interview and present witnesses at trial who could have established that the Petitioner was not responsible for the offenses charged and, more specifically, that trial counsel allowed Det. Capps to summarize the evidence against him at trial without offering any witnesses to demonstrate the identity of the person who passed the checks; (4) that trial counsel failed to retain, or advise Petitioner to retain, a handwriting expert for trial; (5) trial counsel failed to obtain and admit the Sav-A-Lot video at trial; and (6) that the cumulative impact of counsel's errors denied the Petitioner the effective assistance of counsel and "worked to produce a trial setting that was fundamentally unfair."

The State responds that the record supports the post-conviction court's ruling and that the Petitioner has failed to show deficiency or prejudice.

### A. Standard of Review for Post–Conviction Cases

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40–30–103. The burden in a post-conviction proceeding is on the petitioner to

prove the factual allegations to support his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40–30–110(f); see Dellinger v. State, 279 S.W.3d 282, 293–94 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Once the post-conviction court has ruled upon a petition, its findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Wallace v. State, 121 S.W.3d 652, 656 (Tenn. 2003) (citing Nichols v. State, 90 S.W.3d 576, 586 (Tenn. 2002)). This court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Questions concerning the credibility of witnesses and the weight to be given their testimony are for resolution by the post-conviction court. Id. (citing Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997)). It is, therefore, the burden of the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001).

*B. Ineffective Assistance of Counsel Claims*

The Sixth Amendment requires that, in all criminal prosecutions, the accused shall enjoy the right to the effective assistance of counsel." See U.S. CONST. amend. VI.; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980); see also Strickland v. Washington, 466 U.S. 668, 686 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686; Combs v. Coyle, 205 F.3d 269, 277 (6th Cir. 2000). A two-prong test directs a court's evaluation of a claim of ineffectiveness:

> First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the Petitioner by the Sixth Amendment. Second, the Petitioner must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the Petitioner of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687; see also Combs, 205 F.3d at 277.

The performance prong of the Strickland test requires a petitioner to show that counsel's representation fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Combs, 205 F.3d at 278. The reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689. Additionally, courts should defer to trial strategy or tactical choices of counsel if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Finally, it is acknowledged that criminal petitioners are not entitled to perfect representation, only constitutionally adequate representation. Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996).

At the post-conviction hearing, the court found both general sessions counsel and trial counsel to be credible and concluded that both attorneys had rendered effective assistance under the circumstances in this case. In regards to the Petitioner's contention that both his general sessions and trial attorneys failed to investigate several possible witnesses and call other witnesses to testify at trial, we note that the Petitioner did not present the testimony of any of these possible witnesses at the post-conviction hearing. This court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We cannot speculate as to what these witnesses may have said if presented. Id. Hence, the Petitioner failed to present proof that he suffered prejudice from his trial counsel's failure to call "exculpatory" witnesses at trial.

Regarding the Petitioner's contention trial counsel's failure to present a handwriting expert was ineffective, the same aforementioned analysis under Black applies. See id.; see also State v. Johnson, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996). Because the Petitioner did not present a handwriting expert at the post-conviction hearing, he has not shown how trial counsel's failure to present the handwriting expert resulted in prejudice. Black, 794 S.W.2d 752, at 757.

Turning to the general claims that trial counsel did not prepare for trial or present evidence that someone other than the Petitioner had passed checks from the same checkbook at Sav-A-Lot, we conclude that the record supports the trial courts findings that trial counsel understood the critical issues in the case; that he created and executed a sound trial strategy under the circumstances of this case; and that he did present the Sav-A-Lot evidence. Thus, the Petitioner has failed to show deficiency on these issues.

Finally, in a one sentence argument, the Petitioner contends that the cumulative effect of the errors listed in his brief deprived him of his Sixth Amendment right to counsel and worked to produce a trial setting that was fundamentally unfair. The State responds generally that there is no evidence that either general sessions or trial counsels' representation of the Petitioner was deficient, nor that said deficiency caused prejudice to the Petitioner. We agree. A bare laundry list of allegations, without supporting proof, cannot establish ineffective assistance on the basis of cumulative error. See Carl Ronald Dykes v. State, M2006-02771-CCA-R3-PC, 2008 WL 109123, at *8 (Tenn. Crim. App. Jan. 10, 2008), perm. app. denied, (Tenn. May 5, 2008).

Because the alleged witnesses were not presented at the evidentiary hearing, and the evidence does not otherwise preponderate against the post-conviction court's findings, we hold that the post-conviction court did not err in finding that the Petitioner failed to establish by clear and convincing evidence that counsel's actions were deficient or resulted in prejudice to Petitioner's defense. Thus, the Petitioner has failed to show that trial counsel was ineffective. Accordingly, we affirm the judgment of the post-conviction court.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE