IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 27, 2024

**GARY LEE BRAGG, JR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 117446    Hector Sanchez, Judge**

_____

**No. E2023-01247-CCA-R3-PC**

_____

Petitioner, Gary Lee Bragg, Jr., claims that trial counsel provided ineffective assistance by failing to request that the jury be instructed on the lesser-included offenses of aggravated burglary. The post-conviction court found that trial counsel "was deficient for not requesting applicable lesser-included jury instructions" but found that "Petitioner was not prejudiced as a result" and denied relief. We determine that trial counsel's decision not to request an instruction on lesser-included offenses was an "informed choice based upon adequate preparation," *Moore v. State*, 485 S.W.3d 411, 420 (Tenn. 2016), and that Petitioner failed to overcome the presumption that counsel provided adequate assistance and used reasonable professional judgment to make the strategic decision to employ an "all-or-nothing" defense strategy. We agree with the post-conviction court's ruling that Petitioner failed to prove the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Discerning no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and MATTHEW J. WILSON, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Gary Lee Bragg, Jr.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Petitioner was convicted following a jury trial of two counts of Class C felony aggravated burglary, two counts of Class A misdemeanor drug possession, and one count of Class A misdemeanor possession of burglary tools. The trial court sentenced Petitioner to twelve years for each aggravated burglary conviction and eleven months, twenty-nine days for each misdemeanor conviction. The court aligned the two aggravated burglary sentences consecutively and the misdemeanor sentences concurrently for an effective sentence of twenty-four years. This court affirmed the judgments on direct appeal. *State v. Bragg*, No. E2018-01789-CCA-R3-CD, 2019 WL 4054961, at *1, *4 (Tenn. Crim. App. Aug. 28, 2019), *perm. app. denied* (Tenn. Jan. 15, 2020).

## *Factual Summary*

On November 23, 2015, Knoxville Police Officer Raiques Crump responded to a 9-1-1 call regarding a burglary of a home on Iredell Avenue, where Frederick Dorsett and his son lived. *Id*. at *1. Officer Crump said that a side door appeared to have been "pried open" by some type of object and that the home had been "ransacked." *Id.* Mr. Dorsett testified that various items, including a computer, had been taken from the home. *Id.* He said the police later returned his computer. *Id.*

On November 25, 2015, Knoxville Police Officers David Gerlach and Roger McNutt were dispatched in response to two 9-1-1 calls. *Id.* at *1-2. In one call, a female caller reported that "someone had 'broken into' a neighboring apartment" on Gallaher View Road and "that the men were still inside the apartment." *Id* at * 1. The caller provided directions to the apartment and said she would remain "on the line until police officers arrived and placed the men in custody." *Id.*

Miguel Martinez testified that he lived at the apartments on Gallaher View Road. *Id*. at *3. He said that he saw two men on the second floor of the apartment building and that he first thought they "might have been locked out of their apartment." *Id.* A short time later, Mr. Martinez noticed "that the apartment door where the men had been standing had been 'busted into,'" and he saw "a man peeking out of the window." *Id.* Mr. Martinez called 9-1-1 and waited inside his car until the police arrived, and then he pointed out the apartment. *Id.*

Officer Gerlach testified that when he arrived "he saw two men leaving the apartment where a burglary had been reported." *Id.* at *1. The men were ordered to lie down, and they were handcuffed and searched. *Id.* Officer Gerlach found a set of keys with a key fob when he searched Petitioner. *Id.* When Officer Gerlach activated the key fob, the headlights of a vehicle in the parking lot flashed. *Id.* At Officer Gerlach's request,

- 2 -

a police dog unit came to the scene. *Id.* After "the dog 'did a passive alert' for the presence of narcotics," Officer Gerlach searched the vehicle. *Id.* Officer Gerlach found marijuana, Opana pills, and Petitioner's identification in the vehicle's center console. *Id.* He also found "four computers and a Kindle tablet" on the back seat. *Id.* Officer Gerlach entered serial numbers of the computers into the National Crime Information Center ("NCIC") database. *Id.* The serial number on one computer matched the serial number of a computer that had been reported stolen from the Iredell Avenue home. *Id.*

Officer Gerlach testified that the front door to the apartment "had been broken and that a pry bar was found on a sofa cushion inside the apartment." *Id*. at *2. Inside the apartment, he found "that two PlayStation consoles had been disconnected and placed on the floor in the middle of the room." *Id*. He also found inside the apartment an "SKS assault rifle" which was loaded with "thirty-seven live rounds," a ".45-caliber Glock handgun," and a small bag of marijuana. *Id*.

Officer McNutt testified that he also responded to the incident on Gallaher View Road and that, before entering the apartment, he spoke to Mr. Martinez, who stated that the men were still inside the apartment. *Id*. at *3. Officer McNutt stated that, when Petitioner and co-defendant Iran Lyons walked out of the apartment, Officer Gerlach ordered them to lie down and placed them in handcuffs. *Id*.

Ariella Douglas testified that she lived in the Gallaher View Road apartment that was burglarized. *Id*. at *2. She testified "that her apartment had been 'trashed' and that the rifle, the handgun, and the pry bar found inside her apartment did not belong to her." *Id*. She testified that the guns and marijuana were not inside her apartment when she left for work and that she "did not give [Petitioner] and codefendant Lyons permission to enter her apartment." *Id*.

Petitioner testified at trial that, "on the night of his arrest, he and codefendant Lyons went to the apartment complex to visits their friends, C.C. and Tonya." *Id*. at *3. Petitioner said that "nobody was at the apartment when they arrived and that, when they were leaving, they saw a police car pull into the parking lot." *Id*. Petitioner said they initially turned around and walked back up the steps toward the apartment because codefendant Lyons had an outstanding arrest warrant. *Id*. He said that they decided to go back down the steps to leave because they "had done nothing wrong." *Id*. Petitioner claimed that "as they walked down the steps, the police officers 'jumped out' with their firearms pointed at them and instructed them to lie on the ground." *Id*. He said "the officers placed him under arrest, searched him, took his car keys, and placed him in the back of a police car." *Id*.

On cross-examination, Petitioner testified that "he and codefendant Lyons knocked on the door of apartment 208 and that he did not pay attention to determine if anyone was

- 3 -

attempting to break into Ms. Douglas's apartment." *Id*. at *4. He also stated that "he never entered Ms. Douglas's apartment," that he "did not recall seeing anyone run from Ms. Douglas's apartment," and that "he and codefendant Lyons did nothing wrong." *Id*. Petitioner admitted that he owned the vehicle in which the marijuana and Opana pills were found and that the marijuana and pills belonged to him. *Id*. He "agreed that the laptop computers found inside his car did not belong to him and that one of the computers belonged to Mr. Dorsett. *Id.* Petitioner said that he did not know Mr. Dorsett and that, two weeks before his arrest, he bought "all of the laptops 'off the street'" from a man named "Jim[] from the east side," whom he described as "a crackhead." *Id*. Petitioner said he bought the computer owned by Mr. Dorsett as a Christmas gift. *Id.* Petitioner testified that his fingerprints were not found on anything inside Ms. Douglas' apartment, that he was not wearing gloves, and that none of Ms. Douglas's property was in his possession at the time of his arrest. *Id*.

## *Petitions for Post-Conviction Relief*

On April 22, 2020, Petitioner filed a pro se Petition for Post-Conviction Relief ("the Pro Se Petition"), claiming that he received ineffective assistance of counsel. Petitioner did not state in the Pro Se Petition how trial counsel's representation was deficient. Instead, Petitioner claimed that there was insufficient evidence to support his convictions and that the trial court erred in its ruling on several evidenciary issues. Petitioner also claimed that appellate counsel was ineffective for failing to raise "all of the issues" in the direct appeal.

Appointed post-conviction counsel filed an amended petition ("the First Amended Petition"), raising two grounds of ineffective assistance of counsel: (1) trial counsel failed to request that the jury be charged with the lesser-included offenses of aggravated burglary, and (2) appellate counsel failed to raise on appeal the trial court's failure to grant the motion to suppress evidence discovered during the search of Petitioner's vehicle. Post-conviction counsel filed a second amended petition ("the Second Amended Petition"), raising two additional grounds: (1) trial counsel was deficient in failing to object to the State's notice of enhancement factors, and (2) Petitioner's due process rights were violated when the trial court allowed the enhancement notice to be filed during trial.

## **Post-Conviction Hearing**

The following dialogue is quoted from the transcript of the direct examination of Petitioner, with questions posed by post-conviction counsel and answers provided by Petitioner:

Q. All right. You also allege in your petition that the trial court did not charge any lesser-included offenses or certain lesser-included offenses in the jury instructions?

A. They didn't put no -- [the trial judge] didn't put no lesser-included offenses in the jury instructions.

Q. Okay. Did [trial counsel] have any discussion with you prior to the jury charge about what was going to be charged to the jury?

A. No, he didn't have -- he didn't say nothing about lesser-included offenses. He didn't explain nothing. He didn't do nothing.

Q. Okay. And do you recall whether [trial counsel] made any objections at trial --

A. He didn't make no --

Q. -- to the jury as charged -- to the jury --

A. He didn't make no objections at the trial.

Q. Okay. What jury instructions did you want included that were not included?

A. Due to the witness getting on the stand and saying -- stating that nothing was t[a]ken and nothing was stolen and basically the apartment was just vandali[zed]. I was wanting like burglary, it was -- I wanted like aggravated burglary, burglary, criminal trespassing, vandalism. That's what I wanted in the jury instructions.

Q. Okay. But those lesser[-]includeds were not charged?

A. Weren't none of them charged. They didn't give the jury nothing to, nothing to decide for but aggravated burglary.

Q. Okay. Did [trial counsel] have any discussion with you about any rationale for not including lesser-included[s] or charging lesser-included[s]?

A. [Trial counsel] didn't speak on that matter. He didn't say nothing about it.

Q. No discussion that it might have been a trial tactic or anything?

A. No. I looked it, I looked it up myself, but I knew that it was supposed to be lesser[-]included[s] in the jury instructions. I got a few cases, but I didn't bring them with me today, but it say it mandatory supposed to have lesser-included offenses in the jury instructions.

In regard to the Iredell Avenue burglary, Petitioner testified on direct examination as follows:

I didn't do none of that, and then one of the burglaries, [the assistant district attorney] got me found guilty for charged for one of the burglaries, I was never on the scene. Only thing they did on the illegal search and seizure, went in my car, found a computer that I bought off the street from a guy, was fixing to give to my family for Christmas and [the assistant district attorney] charged me with aggravated burglary for that.

And the guy got on the stand and said he didn't even know me, never seen me or nothing. My fingerprints wasn't in the house or nothing to tie me to no burglary. If anything, I should have been charged with a theft, not an aggravated burglary.

On cross-examination, Petitioner agreed that his defense at trial was that he was never in the apartment on Gallaher View Road and that he was "walking up the steps and [he] passed by the burglar who was running out of the apartment."

Trial counsel testified that the trial date was set when he was appointed to represent Petitioner. During direct examination by the State, trial counsel provided the following explanation of the reasons he decided not to request the jury be instructed on lesser-included offenses:

[T]he investigator and I went to the scene. Investigated the scene, went around the building. There was some indication, I think came out at trial, of the possibility that the actual perpetrators had gone out the back window or had run down the steps passing [Petitioner].

There were some identification issues based on the color of [Petitioner's] jacket that was described. [Petitioner] was wearing -- I remember he was wearing a NASCAR jacket, I believe, that was blue with white sleeves, and there was some confusion whether it was a blue coat or a white coat.

- 6 -

We discussed -- [Petitioner] was insistent that he did not go into the apartment. So[,] he didn't actually enter that apartment. There was video from a cruiser, which I think the officer testified they could see him look through the window. So we went over that video, showed that, looked over that, discussed the scene. I know that we went -- the investigator and I went several times to the scene based on conversations we had with [Petitioner] about how things could have been, if they could have gone out the back of the stairwell or some, you know, some other way other than back toward the sidewalk where [Petitioner] actually came in contact with the officer.

When asked if he came up with "a plan for this trial," trial counsel stated:

Yes, and I -- part of that was [Petitioner] was, again, he was insistent that he was not in that apartment. So[,] we kind of went with that, and . . . part of our strategy was that if he wasn't in the apartment, it was an all or nothing.

And that was part of why we didn't do lesser-includeds because we didn't want to take a position -- we didn't want to hedge a position and say, yeah, we partially did this or, you know, maybe we did it, but we're saying we didn't but we might have.

We didn't want to take that position and so we -- and [Petitioner] -- I think we talked about it. I recall having discussions, and I know we talked about it, the investigator and I talked about it at length, about how to go forward and what our -- how to present the defense and what we would present that.

And that was, that was part of why we didn't have lesser-includeds, and I believe we had a colloquy with [the trial court] about there was no allegation that there was any -- that, that it would -- that would have led to a lesser-included argument.

And we weren't making that defense. So[,] I think that was part of why nothing was included there.

During post-conviction counsel's cross-examination of trial counsel, the following exchange occurred:

Q. Okay, okay. Did you specifically discuss with [Petitioner] the question of whether to ask for lesser[-]included offenses?

- 7 -

A.  I think we did because I think I remember the conversation right there and talking to him about it, you know, if he wasn't there, he didn't go in at all, then we can't -- we don't want -- maybe I said we can't, but we don't want to be in the position -- we can't put ourselves in the position of then asking to be found in there.

So[,] I do remember having that.  "If you weren't in there, we weren't in there" conversation.  I don't know if that was -- I can't say for sure when that conversation happened, a hundred percent.  But I mean I'm pretty sure that's -- that would have been the time we would have had that conversation was when we were talking about what was going to be in the, you know, whether we were going to have lesser-includeds or not included in the jury instructions, so.

Q.  Well, you would agree with me that there was proof in the record that might have supported one or more of those lesser-included offenses?

A.  Well, sure.  I mean, if they found that he had been in there, it would have supported that, yeah.

Trial counsel also agreed that there were two aggravated burglaries and that the laptop computer found in Petitioner's car was supposedly stolen in one of the burglaries.

**Post-Conviction Court's Order**

Following the hearing, the post-conviction court took the matter under advisement and issued a written order.  The court denied all grounds raised in the Pro Se Petition, other than the general claim that Petitioner received the ineffective assistance of counsel, because these grounds "could have been . . . and should have been addressed on direct appeal."  The court found that the State timely filed a notice of the enhancement factors that applied to Petitioner's case and denied relief on all claims raised in the Second Amended Petition.  The court stated that it would consider Petitioner's claim that trial counsel provided ineffective assistance by "failing to request jury instruction on applicable lesser-included offenses" but denied all other grounds for relief in the First Amended Petition.

The post-conviction court noted that trial counsel "testified that the defense in Petitioner's case was that law enforcement got the wrong guy and therefore, the strategy was not one involved in arguing a lesser degree of culpability which would support lesser-included offenses, but rather actual innocence."  The court stated that trial counsel "testified that in hindsight, he believed the proof fairly raised potential lesser-included offenses

- 8 -

regarding the aggravated burglary counts." Concerning trial counsel's failure to request that lesser-included offenses be charged to the jury, the post-conviction court concluded:

> In considering whether [trial counsel] performed deficiently, and [whether] the deficient performance prejudiced [] Petitioner, the [c]ourt is guided to *Moore v. State*, 485 S.W.3d 411 (Tenn. 2016). In the *Moore* case, the Tennessee Supreme Court was faced with facts very analogous to the case sub judice. The defense at trial [in *Moore*] was an all-or-nothing defense in which the jury was going to believe that the defendant was not there entirely or find him guilty as charged. The defense attorney further failed to request jury instructions on lesser-included offenses in writing as well. The same occurred in this case. In a decision authored by Justice Sharon Lee, the [s]upreme [c]ourt found that although trial counsel was deficient for failing to request jury instructions on lesser-included offenses, he was not prejudiced and therefore fell short of satisfying the [second prong] of *Strickland* because a reasonable jury would not have convicted him of a lesser-included offense given the record. *Id.* For the purposes of this Petition, the [c]ourt does find that [trial counsel] did perform deficiently by not requesting jury instructions on lesser-included offenses of counts 1 and 2 charging aggravated burglary.
>
> In reviewing the record in the case sub judice, the [c]ourt finds that the proof was simply overwhelming regarding Petitioner's guilt in the two aggravated burglary counts of the indictment. In the Gallaher View Road aggravated burglary, Petitioner was seen by an eyewitness inside of the victim's apartment. Petitioner was taken into custody by responding officers just after exiting the apartment. Regarding the Iredell Avenue aggravated burglary, Petitioner was found with a computer that was reported stolen just two days later when he was arrested during the commission of the Gallaher View apartment investigation. Furthermore, the proof in the record established that Petitioner's co-defendant knew the victim's daughter and where she lived in the Iredell investigation. In short, a reasonable and properly instructed jury would have convicted Petitioner as charged and therefore, he has failed to show this [c]ourt that he suffered prejudice from the deficient performance of trial counsel. In *Moore*, the [s]upreme [c]ourt considered the prejudice analysis through three factors: (1) the distinguishing element between the greater and lesser offenses, (2) the strength of the evidence of the distinguishing element, and (3) the existence of contradicting evidence of the distinguishing element. *Id.* at 423.

The post-conviction court found Petitioner failed to prove by clear and convincing evidence the prejudice prong of *Strickland* and denied relief on Petitioner's claim for ineffective assistance of trial counsel.

Petitioner timely appealed.

## ANALYSIS

In this appeal, Petitioner asserts that "trial counsel was constitutionally ineffective for failing to request lesser-included jury instructions" and that the error "was prejudicial." The State responds that "trial counsel made an informed and strategic decision to not request these lesser-included instructions, and [P]etitioner was not prejudiced by this decision." The State argues that the post-conviction court properly denied relief because Petitioner failed to meet his burden of proving both prongs of *Strickland*. We agree with the State.

### Standard of Review

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022). Post-conviction relief cases often present a "mixed question of law and fact." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a trial court's findings of fact under a de novo standard with a presumption that those findings are correct unless proven otherwise by a preponderance of the evidence. *Phillips*, 647 S.W.3d at 400; Tenn. R. App. P. 13(d). The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Phillips*, 647 S.W.3d at 400; *Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020).

Both the United States Constitution and the Tennessee Constitution guarantee a criminal defendant the right to receive effective assistance of counsel. *Strickland*, 466 U.S. at 686; *Moore*, 485 S.W.3d at 418. The standard used to determine if counsel provided effective assistance is "whether the advice given, or the services rendered . . . are within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "Counsel's representation becomes ineffective when it 'so undermine[s] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013); quoting *Strickland*, 466 U.S. at 686.

"To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that counsel's performance was deficient and that counsel's deficiency prejudiced the defense." *Moore*, 485 S.W.3d at 419, citing *Strickland*, 466 U.S. at 687. To

show that a trial counsel's performance was deficient, "a petitioner must show that counsel's acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 688). This standard does not entitle a petitioner to perfect representation, but only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669; *see Phillips*, 647 S.W.3d at 407. A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *State v. Honeycutt*, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting *Strickland*, 466 U.S. at 669).

### Jury Instructions as to Lesser-Included Offenses

A criminal defendant has "a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011). However, a trial court is not required to give an instruction "simply because an offense is a lesser-included offense of another." *State v. Dellinger*, 79 S.W.3d 458, 496 (Tenn. 2002) (citing *State v. Fowler*, 23 S.W.3d 285, 288 (Tenn. 2000)). In deciding whether to charge a lesser-included offense, the trial court should undertake a two-step analysis. *Burns*, 6 S.W.3d at 469. "First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense." *Id.* "Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense." *Id.*

Tennessee Code Annotated section 40-18-110(a) provides in pertinent part:

When requested by a party in writing prior to the trial judge's instructions to the jury in a criminal case, the trial judge shall instruct the jury as to the law of each offense specifically identified in the request that is a lesser included offense of the offense charged in the indictment or presentment . . . unless the judge determines that the record does not contain any evidence which reasonable minds could accept as to the lesser[-]included offense.

"Absent a written request, the failure of a trial judge to instruct the jury on any lesser[-]included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal." Tenn. Code Ann. § 40-18-110(b). However, the failure of trial counsel to make a written request for an instruction on a lesser-included offense can amount to deficient performance if counsel's decision was not "an informed choice based upon adequate preparation." *Moore*, 485 S.W.3d at 419-20.

In this case, Petitioner was charged with two aggravated burglaries. The first burglary occurred on November 23, 2015, at Mr. Dorsett's residence on Iredell Avenue; the second occurred on November 25, 2015, at Ms. Douglas's apartment on Gallaher View Road. Based on the evidence presented at trial, the lesser-included offenses for aggravated burglary included attempted aggravated burglary, facilitation of aggravated burglary, burglary, attempted burglary, facilitation of burglary, aggravated criminal trespass, attempted aggravated criminal trespass, and criminal trespass. *See State v. Terry*, 118 S.W.3d 355, 359 (Tenn. 2003).

## A. Trial Tactics

Trial counsel and his investigator visited the Gallaher View Road address multiple times to prepare for trial and to develop a trial strategy. Based on the investigation and Petitioner's insistence that neither he nor codefendant Lyons entered Ms. Douglas's apartment or committed any criminal offense, trial counsel decided to employ an "all or nothing" strategy in the Gallaher View Road aggravated burglary and argue that the actual perpetrators had gone out the back window or had run down the steps. Concerning the Iredell Avenue aggravated burglary that occurred two days before the Gallaher View Road aggravated burglary, trial counsel knew that a door had been kicked in at Mr. Dorsett's residence and that a laptop computer had been reported stolen. A laptop computer matching the serial number of Mr. Dorsett's stolen computer was found during the search of Petitioner's car, which was parked in the parking lot of Ms. Douglas's apartment. Counsel also knew that Petitioner claimed that he bought Mr. Dorsett's laptop computer from a "junkie" two weeks before the aggravated robbery of Ms. Douglas's apartment.

## B. Presumption that Counsel Provided Adequate Assistance

Trial counsel devised a trial strategy which included a decision not to request instructions on lesser-included offenses on either count of aggravated burglary after conducting pretrial investigation and preparation. Petitioner's testimony at trial provided no reason for trial counsel to change his trial strategy before the jury was charged. Trial counsel was aware that there were lesser-included offenses of aggravated burglary that he could request to be charged to the jury. Petitioner has not met his burden of proving that the trial counsel's failure to request a lesser-included offense instruction was not an informed strategic decision which was reasonable based on the facts known to him and the law applicable to Petitioner's case.

There is a "strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all strategic and tactical significant decisions." *Davidson v. State*, 453 S.W.3d 386, 393 (Tenn. 2014). Petitioner bore "the burden of overcoming this presumption." *Id*. Although trial counsel's trial strategy was not

successful, we will not afford Petitioner "the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound . . . tactical decision made during the course of the proceedings." *Berry v. State*, 366 S.W.3d 160, 172 (Tenn. Crim. App. 2011).

## C. Distinguishing the Facts of <u>Moore</u>

The post-conviction court found that the facts in this case were "very analogous" to the facts in *Moore v. State*, 485 S.W.3d 411. Although the post-conviction court was correct to a certain extent, we determine that a key fact in *Moore* is not present in this case. In *Moore*, just like in this case, trial counsel failed to request jury instructions on lesser-included offenses, and the jury was faced with "an all-or-nothing defense" in which the jury, if they reached a verdict, could either find the defendant guilty as charged or find him not guilty. *Id*. The supreme court in *Moore*, like the post-conviction court in this case, determined that trial counsel was deficient for failing to request jury instructions on lesser-included offenses. *Id*. at 426. What distinguishes the facts in *Moore* from the facts in this case is, that in *Moore*, the supreme court determined that "[t]rial counsel's decision to forego requesting instructions on any lesser-included offenses . . . was *not* an informed choice based upon adequate preparation." *Moore*, 485 S.W. 3d at 420 (emphasis added).

The fact that the proof at trial supported an instruction for lesser-included offenses, standing alone, does not establish deficient performance. *Moore*, 485 S.W.3d at 419. In this case, Petitioner has failed to show that trial counsel's strategic decision not to request that the court instruct the jury on lesser-included offenses was "so deficient as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" *Vaughn*, 202 S.W.3d at 120 (quoting *Strickland*, 466 U.S. at 688).

Trial counsel made a strategic decision, after investigation and preparation, to seek an acquittal on the charged counts and not to request instructions on any lesser-included offenses. Trial counsel's decision was an informed choice based on a reasonable, although unsuccessful, strategy. Petitioner has failed to show that counsel's trial strategy was not reasonable "under prevailing professional norms." *Id*. We determine that the evidence preponderates against the post-conviction court's finding that post-conviction counsel was deficient in failing to request an instruction on lesser-included offenses.

## D. The Prejudice Prong of <u>Strickland</u>

The post-conviction court concluded that Petitioner failed to show that he suffered prejudice, finding that (1) "the proof was simply overwhelming regarding Petitioner's guilt in the two aggravated burglary counts of the indictment," and (2) a jury instructed on lesser-included offenses "would have convicted Petitioner as charged." Those findings are

presumed correct, and we determine that the evidence does not preponderate against those findings.

## Conclusion

We affirm the judgment of the trial court denying post-conviction relief.


_____
ROBERT L. HOLLOWAY, JR., JUDGE